Thomas A. MINDEN,
Plaintiff–Respondent,

v.

OTIS ELEVATOR COMPANY,
Defendant/Third–Party
Plaintiff–Appellant,

v.

CASSIDY PLASTERING CO., INC.,
Third–Party Defendant–Respondent.

No. 56006.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 12, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 11, 1990.

Application to Transfer Denied
Sept. 11, 1990.

George F. Kosta, St. Louis, for defendant/third-party plaintiff-appellant.

William R. Hirsch, Larry D. Valentine, St. Louis, Mark Hirschfield, Clayton, for plaintiff-respondent.

CRANDALL, Judge.

Plaintiff, Thomas A. Minden, was employed by Cassidy Plastering Co., Inc. (Cassidy). Cassidy subcontracted with a general contractor, McCarthy Brothers Construction Co. (McBro), to do drywall plastering for the restoration of an office building. Plaintiff was injured when the elevator platform (staging) he was riding fell a distance of about 54 feet before coming to an abrupt stop.

Plaintiff sued subcontractor, Otis Elevator Co. (Otis), for negligently inspecting, repairing, operating, and/or maintaining the staging. Otis then brought a third-party action against Cassidy for contractual indemnity. The claim for bodily injury was tried before a jury, resulting in a $150,000 judgment in favor of plaintiff and against Otis. The third-party claim was severed and tried without a jury, resulting in a judgment for Cassidy. Otis, defendant/third-party plaintiff, appeals from both judgments. We affirm.

The first two points of Otis on appeal claim error in the jury-tried case. We review that evidence in the light most favorable to the verdict. *Massey–Ferguson Credit Corp. v. Black*, 764 S.W.2d 137, 145 (Mo.App.1989). A jury verdict will not be overturned unless there is a complete absence of probative facts to support the verdict. *Id.*

McBro subcontracted with Otis to install elevators in the building. Otis installed, maintained and operated a staging in one of the elevator shafts to move construction tools and workers during the construction process.

There were three means of controlling the movement of the staging. First, a worker on the ground floor could operate a hoist that controlled a cable. The cable extended the entire length of the shaft, over the top beam and back down the shaft, where it attached to the staging. Second, a worker riding the staging could operate a skyclimber, which is a motorized device attached to the staging. A short cable hanging from the top beam threads through the skyclimber and then through a hole in the staging. The short cable does not extend to the bottom of the shaft. A safety device (crosby) stops the staging at the bottom of the short cable by forming a loop that is larger than the hole in the staging floor. The third means of controlling the staging was a deadman foot brake on the staging that, unless depressed, prevented the staging from moving.

Cassidy employed an evening shift to do drywall work in the elevator shafts. On the night of the accident, an Otis supervisor, Paul Linck (Linck), operated the staging from the ground floor to get the Cassidy workers to the ninth floor. Once at the ninth floor, the Cassidy workers got off the staging and called down the shaft for Linck to bring the staging back down. Linck then brought the staging to a level somewhere between the ninth and ground floors, disconnected the hoist cable, and connected the skyclimber cable. He then sent the staging back to the Cassidy workers somewhere on the upper floors. At trial Linck could not recall how he had attached the skyclimber or whether he had attached the crosby at the end of the short cable.

Throughout their shift, the Cassidy workers operated the staging to move between the top and ninth floors by using the skyclimber. Linck left the worksite about 12:30 a.m. The four Cassidy workers, including plaintiff, began to leave at the end of their shift (about 1:00 a.m.) by boarding the staging at the twelfth floor. Using the skyclimber, they began to descend to the ground floor. Somewhere close to the seventh floor, the short cable came through the bottom of the staging, pulled clear of the skyclimber, and the staging fell about 54 feet through the shaft. The staging stopped near the second floor when one of the Cassidy workers activated the deadman foot brake.

Linck had instructed the Cassidy workers how to operate the staging themselves by using the skyclimber and foot brake. Linck knew that they thereafter routinely used the staging to move themselves. The Cassidy workers were never informed, however, that the skyclimber method employed a short cable and crosby which, if not properly rigged, would allow the staging to fall freely down the shaft.

Otis first claims the trial court erred in overruling its motions for a directed verdict and for judgment notwithstanding the verdict because the evidence was insufficient in four areas to make a jury submissible case of negligence. Otis claims the evidence failed to show: (1) that Otis had a duty to ensure the reasonably safe condition of the staging; (2) that Otis had knowledge of the absence of a crosby on the short cable on the evening the staging fell; (3) that the crosby was missing when the accident occurred; and (4) that the absence of a crosby renders the staging unreasonably dangerous.

■ One of the elements of a cause of action for negligence is the existence of a duty on the part of defendant to protect plaintiff from injury. *Faheen By Hebron v. City Parking Corp.*, 734 S.W.2d 270, 272 (Mo.App.1987). A company that installs a self-service elevator has a duty to exercise a degree of care commensurate with the likelihood of persons being injured by reason of defects in the equipment or faulty construction. *Ward v. City National*

*Bank & Trust Co. of Kansas City*, 379 S.W.2d 614, 619–620 (Mo. banc 1964). Cassidy workers routinely operated the staging themselves by using the skyclimber. Otis knew of this use because only an Otis employee could disengage the hoist cable, engage the skyclimber and send the staging up to the Cassidy workers. Otis instructed the Cassidy workers how to operate the staging themselves. Moreover, on the evening of the accident, Otis knew the Cassidy workers were operating the staging via the skyclimber to do work between the ninth and twelfth floors. There was thus sufficient evidence that Otis had a duty to ensure the reasonably safe condition of the staging.

■ The remaining elements in an action for negligence are the failure of defendant to perform the duty owed to plaintiff and injury to plaintiff resulting from such failure. *Faheen*, 734 S.W.2d 270, 272. A mere possibility that a person charged with negligence committed a negligent act is not sufficient; circumstances in evidence must prove a reasonable probability that the defendant is the one who performed the negligent act and that the act shown would, in the natural course of events, result in the injury. *Brison v. O'Brien*, 645 S.W.2d 142, 145 (Mo.App.1982).

■ It was undisputed that it was Linck's sole responsibility to attach the crosby. Linck had no recollection, however, of whether he attached the crosby after rigging the skyclimber and short cable. All four Cassidy workers saw the short cable pull through the floor of the staging and free of the skyclimber. Defendant asserted no alternative causes for the accident either at trial or on appeal. Finally, Otis admitted that the absence of a crosby renders use of a short cable unreasonably dangerous because nothing would stop the staging from descending past the bottom of the short cable. There was thus sufficient evidence to show that defendant failed to perform the duty owed to plaintiff and that plaintiff was injured thereby. The first point of Otis is denied.

For its second point, Otis claims the trial court erred in giving plaintiff's not-in-MAI verdict directing instruction. No error of law appears. An extended opinion on this

point would have no precedential value. The second point of Otis is denied pursuant to Rule 84.16(b).

For its final point, Otis claims error in the court-tried case for contractual indemnity. Our review of this point is limited by the oft-cited *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ At trial Otis alleged the existence of a tripartite agreement between McBro, Cassidy and Otis. It was undisputed that contracts existed between McBro and Cassidy and between McBro and Otis. Further, a term of the contract between McBro and Otis required that Otis indemnify and hold harmless McBro for claims growing out of the negligence of Otis. Otis alleged, however, the existence of an "extra-on contract" that required Cassidy to, *inter alia*, indemnify and hold harmless Otis for claims that Cassidy might have growing out of the performance of work under the contract between McBro and Otis.

Otis introduced into evidence a one page document that reads in pertinent part:

I/We authorize you to perform overtime field labor as follows:

Run stages for contractor.

The undersigned hereby assumes complete responsibility for, and agrees to indemnify and save harmless Otis Elevator Company, its agents and employees from any and all damages or claims for damages which they or any of them may sustain by reason of injury or death to persons or damage to property growing out or connected with the performance of the work under this order, whether caused by the negligence of Otis Elevator Company, its agents or employees or otherwise.

Agents of both Cassidy and McBro, but not of Otis, signed this document. The construction superintendent for Otis testified that no tripartite agreement existed.

■ Otis claims the trial court erred in finding that the purported extra-on contract between itself and Cassidy was ambiguous on its face and therefore not a valid contract. A contract is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations. *Nixon v. Life Investors*

*Ins. Co. of America*, 675 S.W.2d 676, 679 (Mo.App.1984). To be valid, all the essential terms of a contract must be sufficiently definite to enable the court to give them an exact meaning. *Marshall v. Edlin*, 690 S.W.2d 477, 480 (Mo.App.1985).

The contract states "the undersigned" indemnifies Otis, but agents of both McBro and Cassidy signed the contract. The contract further states the purported indemnification relates only to work of Otis "under this order," but it makes no reference to an identifiable order. Moreover, the contract consistently uses plural pronouns, without identifying to whom they refer, for (1) the party with a pre-existing contract with Otis; (2) the party newly agreeing to authorize Otis to run stages; (3) the party indemnifying Otis; and (4) the party agreeing to pay Otis. From the foregoing, we cannot say that the trial court erred in concluding this purported contract was ambiguous on its face and therefore not a valid contract. The third point of Otis is denied.

The judgments are affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.