885 F.Supp. 194 (1995)
UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff,
v.
HOUSING AUTHORITY OF the CITY OF POPLAR BLUFF, MISSOURI, Defendant/Third Party Plaintiff,
v.
Joe BARNES.
No. 1:92CV164SNL.
United States District Court, E.D. Missouri, Southeastern Division.
March 28, 1995.
Joseph C. Blanton, Jr., Blanton and Rice, Sikeston, MO, for plaintiff and third party defendant.
John L. Oliver, Jr., Oliver and Oliver, Cape Girardeau, MO, Daniel T. Moore, Scott and Moore, Poplar Bluff, MO, for defendant.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This matter is before the Court on cross motions for summary judgment. This case follows a wrongful death action in state court which ended in settlement. The action before *195 the Court involves a contract for indemnification and insurance payment.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.
The Housing Authority of Poplar Bluff was the operator of a housing complex called Brent Tinnin. The Brent Tinnin Housing Complex was developed as a project with the Department of Housing and Urban Development. The complex was of such a size and design that it needed two elevators. Tragically, Mamie Jane Farmer fell down one of those elevator shafts and died. Her family brought a wrongful death suit against the Morris and Wallace Elevator Company and the Butler County Council on Housing for the Elderly and Handicapped, Inc. That case was settled before trial. Morris and Wallace paid One Hundred and Fifty Thousand Dollars ($150,000) and the County paid Forty Thousand Dollars ($40,000).
Morris and Wallace had been hired by the Poplar Bluff Housing Authority to maintain and service the elevators. The contract that was executed between the two parties was called the Full Maintenance Service Contract. The contract was the standard contract that Morris and Wallace used in its operations.
One section of that contract called for the Poplar Bluff Housing Authority to:
[I]ndemnify, protect and save harmless Morris and Wallace Elevator Company from and against liabilities, losses of any kind or nature imposed on, incurred by, or asserted against Morris and Wallace Elevator Company arising out of the active or passive negligence of Morris and Wallace Elevator Company in any way connected with the use or operation of the equipment.
(Pl.Mem. in Opp. to Sum. Judgment Ex. 1 at 2).
The contract went on to say: "You shall at all times and at your own cost, maintain comprehensive bodily injury and property damage insurance (naming Morris and Wallace Elevator Company as an additional insured), including bodily injury and property damage caused by the ownership, use or operation of the equipment described herein." (Id. at 2).
The defendant never obtained insurance coverage naming Morris and Wallace as an *196 insured nor did the defendant indemnify Morris and Wallace for the state action.
Finding no disagreement as to the material facts, the Court will now apply the relevant law. Each side makes full argument in both its summary judgment motions and its reply motions. The Court will consolidate the arguments and address them in total.
The Defendant's first argument is that there was no indemnity required. The Defendant contends that because of the unique nature of the complex and its relationship to HUD, the Housing Authority was forced to accept the bid from Morris Wallace due to the sole fact that it was the lowest bid and Housing Authority was prohibited from negotiating; therefore, this becomes a contract of adhesion and is void.
Alternatively, the Defendant argues that even if they were contractually obligated to indemnify, the contract does not call for indemnification in a situation like this. The Defendant argues that the claim paid in the state court would not have been covered.
In a third alternative, the Defendant argues that even if they were obligated to indemnify, and even if this accident would have been covered under the indemnification contract, Housing Authority may subrogate the rights of Morris Wallace, which have already been subrogated in this claim by USF & G, in a claim against the negligent employee, Joe Barnes.
The Court rejects all three arguments. The contract called for indemnification. The indemnification was broad, but it was specific. The policy was to cover "losses of any kind ... arising out of the active or passive negligence of Morris Wallace" (emphasis added). The case which both parties rely upon, Kansas City Power & Light Co. v. Federal Const. Corp., 351 S.W.2d 741 (Mo. 1961), holds that parties may privately contract for indemnification. The question in the K.C. Power & Light case was whether a party's own negligence could be read into the contract. The court observed that it would be unusual for one party to indemnify the negligence of another and that it would "[T]ake clear language to show that a contract of indemnity was intended to cover conditions or operations under the control of the party indemnified, and not under the control of the indemnifying party, such, for instance, as accidents, the proximate cause of which is the negligence of the party indemnified." 351 S.W.2d at 745. That is exactly the situation in this case. The contract makes it clear that the negligence of Morris Wallace is covered.
The Court rejects the second assertion that this is void as an adhesion contract. Although this was a preprinted form contract, Missouri case law correctly points out that most contracts signed in this country fall into that category and a rule automatically invalidating adhesion contracts would be completely unworkable. Accordingly, Missouri does not view adhesion contracts as inherently sinister. Hartland Computer v. Insurance Man, Inc., 770 S.W.2d 525, 527 (Mo.App.1989).
The Court is not persuaded by the Defendant's other argument that HUD regulations required the Housing Authority to blindly accept the bid of the lowest bidder regardless of any other factors and therefore, Housing Authority cannot be held liable. The extension of that argument would relieve liability for any contract that they might have entered into with any of their contractors who built or helped maintain the complex.
The HUD regulations, as submitted by the Defendant, call for the Defendant to "contract with qualified independent contractors for the maintenance and repair of air-conditioning systems and elevators, and for extraordinary repairs beyond the capability of regular maintenance employees." (Def.Ex. 1 Management Agreement, at 4). The Management Agreement goes on to say that when conducting bids for maintenance, "the Project Owner agrees to accept the bid which represents the lowest price taking into consideration the bidder's reputation for quality of workmanship or materials and timely performance, and the time frame within which the service or goods are needed." (Def.Ex. 1 Management Agreement Attachment 1). The contract with Morris Wallace was not forced upon the Housing Authority; price *197 was not the only criteria used to select contractors and negotiation is not prohibited.
Although the Court finds no reason why the Defendants could not subrogate into the rights of USF & G against Joe Barnes as the negligent employee, there is no claim stated because he is protected by the indemnity contract. The Defendant correctly points out that an employee may be liable to the employer for damages which he causes but which are paid by the employer. State ex rel. Algiere v. Russell, 359 Mo. 800, 223 S.W.2d 481, 483 (1949). However, the indemnification contract called for the indemnification of Morris Wallace. Because a corporation is an artificial entity, it must operate through the acts of its agents. See, Standard of Beaverdale v. Hemphill, 746 S.W.2d 662, 663 (Mo.App.1988). The Court finds that the indemnification agreement served to indemnify Joe Barnes as an agent of the corporation.
Finally, the Plaintiff argues in its cross motion for summary judgment that it should be allowed a trial to challenge what it considers to be an excessive settlement agreement and excessive attorney fees from the state court wrongful death case.
This argument constitutes a collateral attack, which is any proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered, or by appeal. The law tries to invest judicial determinations with permanency. The formal pronouncements of legal tribunals require finality and conclusiveness. Firmly established principles of law, developed to effectuate this fundamental policy, allow courts to sustain collateral attacks only when the objections to the judgment are such as to render it not merely erroneous but void. See, A.D. Juilliard & Co. v. Johnson, 166 F.Supp. 577, 585 (S.D.N.Y.1957).
The point is well established that the effect of a settlement is that of a judgment and can only be set aside in a direct proceeding. "The reason lies in the manifest unfairness and disruption of settled rights which would result from permitting a party to a completely executed agreement to reopen the issue of his liability in order to obtain a collateral benefit from the very consideration surrendered." A.D. Juilliard & Co. v. Johnson, 259 F.2d 837, 844 (2nd Cir.1958). Therefore, this request for a trial on the state court settlement issues is denied.
Accordingly,
IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment (# 20) is DENIED.
IT IS FURTHER ORDERED that the Plaintiff's and Third Party Defendant's Cross Motion for Summary Judgment (# 25) is GRANTED as to liability but DENIED as it relates to a reconsideration of the state court settlement agreement and related attorney fees.