# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

No. 96-1556

United States Fidelity and     *
Guaranty Company,     *
    *
          Appellee,     *
    *
      v.     *
    * Appeal from the United States
Housing Authority of the City     * District Court for the
of Poplar Bluff, Missouri,     * Eastern District of Missouri
    *
          Appellant.     *
    *
Joe Barnes,     *
    *
Third-Party Defendant-Appellee.     *

Submitted: November 22, 1996

Filed: May 19, 1997

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
BOGUE,[*] District Judge.

McMILLIAN, Circuit Judge.

United States Fidelity and Guaranty Company (USF&G) brought this
indemnity action in the United States District Court[1] for the

---

[*]The Honorable Andrew W. Bogue, United States
District Judge for the District of South Dakota,
sitting by designation.

[1]The Honorable Stephen N. Limbaugh, United States District
Judge for the Eastern District of Missouri.

Eastern District of Missouri against Housing Authority of the City of Poplar Bluff, Missouri (Housing Authority), to enforce rights assigned to it by the Morris and Wallace Elevator Company (Morris and Wallace). Housing Authority thereafter filed a third-party action against Joe Barnes, an employee of Morris and Wallace. Following a final judgment in favor of USF&G and Barnes, Housing Authority filed the present appeal from the district court's order granting summary judgment in favor of USF&G and Barnes, United States Fidelity & Guaranty Co. v. Housing Authority, 885 F. Supp. 194 (E.D. Mo. 1995) (USF&G v. Housing Authority), and the district court's final order denying Housing Authority's motion for reconsideration and awarding USF&G $239,849.30 plus interest. Id., No. 1:92 CV 164 (E.D. Mo. Feb. 5, 1996) (hereinafter "slip op. (Feb. 5, 1996)"). For reversal, Housing Authority argues that the district court erred in (1) holding that Housing Authority's written agreement to indemnify Morris and Wallace for certain losses and liabilities covered Morris and Wallace's liability in an underlying state court action; (2) holding that the indemnity agreement was not void as an adhesion contract; (3) ordering Housing Authority to pay interest on the money judgment pursuant to Mo. Rev. Stat. § 408.020 and accruing as of July 20, 1995, the date on which the district court entered its judgment of liability; and (4) dismissing on summary judgment Housing Authority's third-party action against Barnes. For the reasons set forth below, we modify the district court's order dated February 5, 1996, to provide post-judgment interest pursuant to 28 U.S.C. § 1961, accruing as of February 5, 1996, and we affirm the judgment as modified.

## Background

The underlying facts are not in dispute. Housing Authority, at all relevant times, operated a housing complex called the

-2-

Brent B. Tinnin Apartments (the complex), in Poplar Bluff, Butler County, Missouri. The complex was owned by the Butler County Council on Housing for the Elderly and Handicapped (the Butler County Council), and was developed with the assistance of the United States Department of Housing and Urban Development (HUD). As the managing agent of the complex, Housing Authority hired Morris and Wallace to install, maintain, and service two elevators at the complex. In October 1984, Housing Authority and Morris and Wallace entered into a "Full Maintenance Service Contract" (hereinafter referred to as "maintenance service contract"), which provided in pertinent part:

> You [Housing Authority] shall indemnify, protect and save harmless Morris & Wallace Elevator Company from and against liabilities, losses and claims of any kind or nature imposed on, incurred by, or asserted against Morris & Wallace Elevator Company arising out of the active or passive negligence of Morris & Wallace Elevator Company in any way connected with the use or operation of the equipment.
>
>     . . . .
>
>     . . . You [Housing Authority] shall at all times and at your own cost, maintain comprehensive bodily injury and property damage insurance (naming Morris & Wallace Elevator Company as an additional insured), including bodily injury and property damage caused by the ownership, use or operation of the equipment described herein.

See Joint Appendix at 80 (indemnity agreement in maintenance service contract); see also USF&G v. Housing Authority, 885 F. Supp. at 195 (quoting indemnity agreement). Housing Authority never purchased or maintained any insurance naming Morris and Wallace as an insured.

In December 1986, while the maintenance service contract was still in effect, Mamie Jane Farmer accidentally fell down one of the elevator shafts at the complex and died from injuries sustained in the fall. Members of her family brought a wrongful death action in state court against Morris and Wallace and the Butler County Council. (Hereinafter, the family members who brought this state court action are referred to as "the state court plaintiffs.") USF&G, as Morris and Wallace's insurer, tendered the defense of the state court claims to Housing Authority, based upon the indemnification language in the maintenance service contract. Housing Authority refused to provide a defense for, or otherwise indemnify, Morris and Wallace. Thereafter, the state court plaintiffs settled their claims against the Butler County Council for $40,000 and settled their claims against Morris and Wallace for $150,000, which was paid by USF&G.

USF&G, as Morris and Wallace's assignee, then brought this action in federal district court, seeking to enforce the above-quoted indemnity agreement against Housing Authority. Housing Authority filed a third-party complaint against Barnes, alleging that Barnes's negligence caused the accident. (Hereinafter USF&G and Barnes are together referred to as "appellees.") Housing Authority moved for summary judgment asserting that it had no duty to indemnify Morris and Wallace. Appellees moved for partial summary judgment on the indemnity issue and for dismissal of Housing Authority's third-party action against Barnes. The district court denied Housing Authority's motion for summary judgment and granted appellees' cross-motion for summary judgment. USF&G v. Housing Authority, 885 F. Supp. at 197. Following further summary judgment proceedings on the amount of damages owed by Housing Authority to USF&G, the district court ordered Housing Authority to pay (1) reasonable attorneys' fees and costs in the amount of $239,849.30 (which included the $150,000 settlement

-4-

payment by USF&G to the state court plaintiffs on behalf of Morris and Wallace) and (2) a "per diem interest penalty" calculated pursuant to Mo. Rev. Stat. § 408.020, accruing as of July 20, 1995, the date upon which the district court entered a judgment of liability.  Slip op. (Feb. 5, 1996) at 3.  This appeal followed.

**Discussion**

<u>Indemnity agreement</u>

Housing Authority first argues that the district court erred in holding, on summary judgment, that the indemnity agreement in the maintenance service contract, if valid, covered Morris and Wallace's liability arising out of the underlying state court action.  We review a grant of summary judgment <u>de novo</u>.  The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>see, e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Get Away Club, Inc. v. Coleman</u>, 969 F.2d 664, 666 (8th Cir. 1992); <u>St. Paul Fire & Marine Ins. Co. v. FDIC</u>, 968 F.2d 695, 699 (8th Cir. 1992).  Where, as here, the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  <u>Crain v. Board of Police Comm'rs</u>, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

In support of the argument that the indemnity agreement does not cover Morris and Wallace's liability arising from the underlying state court wrongful death action, Housing Authority highlights language in the agreement which limits the

indemnification to liabilities and losses "arising out of the active or passive negligence [of Morris and Wallace] . . . in any way connected with the use and operation of the equipment." Housing Authority argues that the state court action was based upon a theory of product liability, not negligence. Moreover, Housing Authority argues, although claims of "negligence and carelessness" were asserted in the state court plaintiffs' second amended petition, those negligence claims were in connection with the design, manufacture, sale, or distribution of the elevator equipment, not the "use or operation" of the elevator equipment. Housing Authority separately claims that the Butler County Council settled with the state court plaintiffs on the condition that the state court plaintiffs agree to pursue only strict liability claims against Morris and Wallace. The settlement between the Butler County Council and the state court plaintiffs was consummated before the state court plaintiffs settled with Morris and Wallace. Therefore, Housing Authority argues, the state court plaintiffs could not -- consistent with their contractual obligations -- pursue a negligence claim against Morris and Wallace at the time they settled their claims against Morris and Wallace. Thus, Housing Authority concludes, the settlement could not have implicated the indemnity agreement in the maintenance service contract. Housing Authority also contends, among other things, that the indemnity agreement is at least ambiguous with respect to whether Morris and Wallace's settlement with the state court plaintiffs would be covered, thus precluding summary judgment.

The district court concluded that the indemnity agreement in the maintenance service contract clearly and unambiguously covered Morris and Wallace's potential liabilities and losses arising out of the underlying state court action. We agree. As the district court observed, "the indemnification was broad, but it was specific." 885 F. Supp. at 196. According to the undisputed facts

-6-

of the present case, each of the two distinct requirements of the indemnity agreement were satisfied. First, the state court plaintiffs' claims against Morris and Wallace arose out of the alleged negligence of Morris and Wallace. Second, those claims were connected with the use or operation of the elevator equipment. The district court correctly held that, according to the plain and ordinary meaning of the indemnity agreement, Morris and Wallace's potential liability in the underlying state court action was covered. Finally, notwithstanding the settlement agreement between the state court plaintiffs and the Butler County Council (to which neither Morris and Wallace nor USF&G was a party), which purportedly bound the state court plaintiffs to pursue only strict liability claims against Morris and Wallace, the state court plaintiffs' second amended petition, which was pending at the time they settled with Morris and Wallace, nevertheless did assert claims of negligence against Morris and Wallace. Therefore, we hold that the district court did not err in holding on summary judgment that the indemnity agreement in the maintenance service contract covers the losses incurred by USF&G, on behalf of Morris and Wallace, in settling the underlying state court wrongful death action.

Housing Authority next argues that the indemnity agreement is contained in an adhesion contract and void as against public policy. Housing Authority maintains that, "[i]n order for a contract of indemnity to avoid violating public policy, particularly where one party seeks indemnification against the results of his own negligence," the following three factors must be present: (1) the contract was formed in a commercial setting; (2) the parties were on substantially equal footing when the contract was formed; and (3) the contract is unambiguous. Brief for Appellant at 18; see also Kansas City Power & Light Co. v. Federal Constr. Corp., 351 S.W.2d 741, 745 (Mo. 1961) (where

parties stand on substantially equal footing, one may legally agree to indemnify the other against the results of the indemnitee's own negligence so long as such intent is expressed in clear and unequivocal terms). Housing Authority contends that the parties to the maintenance service contract were neither in a commercial setting nor on substantially equal footing. Citing the HUD "Management Agreement" executed by Housing Authority and the Butler County Council, Housing Authority argues that HUD requirements essentially compelled Housing Authority to accept Morris and Wallace's bid because it was the lowest bid submitted and Housing Authority was given no indication of Morris and Wallace's poor workmanship or inability to comply with deadlines. See Joint Appendix at 71 (section entitled "Bids and Purchase Discounts, Rebates of Commissions" of HUD Management Agreement).[2] Moreover, Housing Authority argues, it was precluded from negotiating or modifying the terms of the indemnity agreement because that provision was contained in a pre-printed form contract provided by Morris and Wallace. Finally, Housing Authority suggests that, to the extent the indemnity agreement may be construed to cover Morris and Wallace's potential liability for the design, manufacture, or sale of the elevator equipment, it must be ambiguous because it is

_____

[2]The HUD Management Agreement provides in pertinent part:

The Management Agent [Housing Authority] shall solicit written cost estimates (i.e., bids) from at least three contractors or suppliers for any work item which the Project Owner [Butler County Council] or the Secretary [of HUD] estimates will cost $5,000 or more and for any contract or ongoing supply or service arrangement which is estimated to exceed $5,000 per year. The Management Agent agrees to accept the bid which represents the lowest price taking into consideration the bidder's reputation for quality of workmanship or materials and timely performance, and the time frame within which the service or goods are needed.

contained in a maintenance contract, not a sales contract.  Brief for Appellant at 18, 20-21 (citing Minden v. Otis Elevator Co., 793 S.W.2d 461, 463-64 (Mo. Ct. App. 1990) (purported indemnity contract was ambiguous on its face and therefore not valid)).

The district court held that the indemnity agreement was not void as an adhesion contract.  USF&G v. Housing Authority, 885 F. Supp. at 196. We again agree.  As the district court noted, the HUD Management Agreement did not require Housing Authority to accept Morris and Wallace's bid simply because it was the lowest.  It bound Housing Authority to "accept the bid which represent[ed] the lowest price taking into consideration the bidder's reputation for quality of workmanship or materials and timely performance, and the time frame within which the service or goods are needed."  Id. (quoting HUD Management Agreement) (emphasis added).  More importantly, however, there is no evidence to suggest that HUD prohibited Housing Authority from negotiating the contract terms, including the indemnity agreement.  Id. at 197.  As the district court correctly reasoned, the mere fact that Housing Authority and Morris and Wallace entered into a pre-printed form contract does not render it void; such a per se rule automatically invalidating adhesion contracts would be unworkable and is not recognized under Missouri law.  Id. at 196 (citing Hartland Computer Leasing Corp. v. Insurance Man, Inc., 770 S.W.2d 525, 527 (Mo. Ct. App. 1989)).  Finally, as discussed above, we hold as a matter of law that the indemnity agreement is not ambiguous with respect to the indemnification issue in the present case.  According to the maintenance service contract's express terms, Housing Authority agreed to indemnify Morris and Wallace against any and all liabilities and losses asserted against Morris and Wallace "arising out of the active or passive negligence of [Morris and Wallace] in any way connected with the use or operation of the equipment." Id. at 195 (quoting indemnity agreement).  Moreover, Housing Authority

had a contractual duty (which it breached) to maintain on behalf of Morris and Wallace comprehensive bodily injury and property damage insurance, "including bodily injury and property damage caused by the ownership, use or operation of" the elevator equipment. Thus, we agree with the district court's conclusion that the indemnity agreement clearly and unambiguously covered the negligence and related claims asserted by the state court plaintiffs against Morris and Wallace, and the losses arising out of those claims. Id. at 196. Accordingly, we hold that the district court did not err in holding on summary judgment that the maintenance service contract, including the indemnity agreement, is not void as an adhesion contract.

Post-judgment interest

Housing Authority next argues that the district court erred in ordering it to pay a "per diem interest penalty" calculated according to Mo. Rev. Stat. § 408.020, rather than the federal standard, 28 U.S.C. § 1961(a). See slip op. (Feb. 5, 1996) at 3. In support of this argument, Housing Authority cites Weitz Co. v. Mo-Kan Carpet, Inc., 723 F.2d 1382, 1385-86 (8th Cir. 1983) (per curiam) (§ 1961 applies to any judgment in a civil case recovered in a federal district court; no exemption is made for diversity cases). Housing Authority also argues that the district court erred in holding that post-judgment interest should begin to accrue as of the date of the district court's liability judgment, July 20, 1995, rather than the date of final judgment on damages, February 5, 1996. See id. In support of this argument, Housing Authority cites Happy Chef Systems, Inc. v. John Hancock Mut. Life Ins. Co., 933 F.2d 1433, 1437 (8th Cir. 1991) ("Section 1961(a) does not provide for interest until a money judgment has been entered.").

In response, USF&G agrees that post-judgment interest should be calculated according to 28 U.S.C. § 1961 and should accrue beginning on February 5, 1996.  However, USF&G argues that the interest awarded for the period between July 20, 1995, and February 5, 1996, should not be vacated but should instead be awarded as *pre*-judgment interest.

We modify the interest portion of the district court's order.  Slip op. (Feb. 5, 1996) at 3.  USF&G shall be awarded post-judgment interest calculated in accordance with 28 U.S.C. § 1961, accruing as of the date of the final judgment on damages, February 5, 1996  (instead of a "per diem interest penalty" calculated in accordance with Mo. Rev. Stat. § 408.020 and accruing as of July 20, 1995).  We reject USF&G's suggestion that we treat the district court's award of interest for the interim period of July 20, 1995, to February 5, 1996, as an award of pre-judgment interest.  The district court clearly intended to award only post-judgment interest to USF&G.  See id. (awarding reasonable attorneys' fees and costs, "plus a per diem interest penalty . . . from the date of judgment of July 20, 1995") (emphasis added).  Thus, USF&G is essentially arguing that the district court erred in failing to award pre-judgment interest.  However, because USF&G failed to raise this separate issue in a cross-appeal, USF&G is jurisdictionally barred from raising it now.  The district court's order of February 5, 1996, is affirmed as modified.

<u>Third-party action</u>

In dismissing Housing Authority's third-party action against Barnes, the district court observed that, in some instances, an employee may be liable to his or her employer for damages which he or she causes but which are paid by the employer.  885 F. Supp. at

-11-

197.  However, the district court noted, the maintenance service contract provided for the indemnification of Morris and Wallace.  "Because a corporation is an artificial entity, it must operate through the acts of its agents. . . .  [T]he indemnification agreement served to indemnify Joe Barnes as an agent of the corporation."  <u>Id.</u>  Thus, the district court concluded, Housing Authority, as the indemnitor, could not state a claim against Barnes, its indemnitee, by subrogating into the rights of USF&G.

On appeal, Housing Authority argues that the district court erred in holding that Barnes is indemnified under the service maintenance contract and consequently dismissing Housing Authority's third-party action against Barnes.  Because the indemnification language in the maintenance service contract does not expressly mention <u>agents, servants, or employees</u> of Morris and Wallace, Housing Authority argues, indemnification of such individuals may not be implied.  Housing Authority argues that, "when a party to a contract agrees to indemnify a corporation as an entity, it does not without clear and unequivocal language to that effect, contract to indemnify the individual agents, servants and employees whose culpable conduct renders the corporation liable."  Brief for Appellant at 26 (citing <u>Lake Center Boatworks, Inc. v. Martin</u>, 804 S.W.2d 842 (Mo. Ct. App. 1991) (<u>Martin</u>)).  Housing Authority also notes that Morris and Wallace drafted the contract and, therefore, could have specifically included "agents and employees" within the terms of the indemnity agreement.  Moreover, Housing Authority argues, the use of such language is not uncommon.  <u>Id.</u> at 25 (quoting <u>Minden</u>, 793 S.W.2d at 464 (quoting indemnity agreement, which refers to "agents and employees")).  Housing Authority thus concludes that the indemnity agreement in the present case clearly and unambiguously excluded coverage for agents and employees of Morris and Wallace and, therefore, Housing

Authority should be permitted to subrogate into the rights of USF&G against Barnes.

Contrary to Housing Authority's assertions, the cases cited in its brief do not reject the proposition that an indemnity agreement naming a corporation may extend to the corporation's agents and employees, despite the absence of express language to that effect. In Martin, 804 S.W.2d at 845, for example, the court held that the indemnitors were not obligated to pay for losses resulting from a fire of unknown origin. The Martin court explained that, under the particular circumstances of that case, "[t]he indemnity clause . . . did not specifically extend to events not resulting from the [indemnitors'] negligence." Id. Indemnification for a corporation's agent or employee was not an issue. The Martin court also noted that "[a] contract of indemnity is construed to cover all losses, damages or liabilities which it reasonably appears to have been intended by the parties to cover." Id. In the present case, we find it beyond genuine dispute that the indemnity agreement in the maintenance service contract was intended to cover losses or liabilities arising out of the alleged negligence of individual employees of Morris and Wallace in connection with the use or operation of the elevator equipment.[3] Accordingly, we hold that the district court did not err in dismissing Housing Authority's third-party action against Barnes.

---

[3] In assessing the intent of the parties, we also find noteworthy the fact that Housing Authority had a contractual duty to purchase and maintain comprehensive bodily injury and property damage insurance, naming Morris and Wallace as an insured. Had Housing Authority not breached that contractual duty, such comprehensive bodily injury and property damage insurance would likely have covered the exact type of claim Housing Authority now seeks to assert against Joe Barnes under a subrogation theory.

-13-

## Conclusion

For the foregoing reasons, we modify the district court's order of February 5, 1996, to provide that the award of post-judgment interest shall be calculated at the rate determined pursuant to 28 U.S.C. § 1961 and shall begin to accrue on February 5, 1996, and we affirm the judgment as modified.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.