# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3362

_____

Union Electric Company,                    *
doing business as AmerenUE,                *
                                           *
                                           *
            Appellant,                     *
                                           *   Appeal from the United States
      v.                                   *   District Court for the
                                           *   Eastern District of Missouri.
                                           *
Southwesten Bell                           *
Telephone L.P. , successor                 *          [PUBLISHED]
Southwestern Bell Telephone                *
Company,                                   *
                                           *
            Appellee.                      *

_____

Submitted: March 11, 2004
Filed: August 6, 2004

_____

Before RILEY and MELLOY, Circuit Judges, and ERICKSON,[1] District Judge.

_____

ERICKSON, District Judge.

    This is an action for indemnity brought by virtue of a Joint Use Agreement between Union Electric Company d/b/a AmerenUE (Ameren), a Missouri corporation, and Southwestern Bell Telephone L.P., successor in interest to

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota, sitting by designation.

Southwestern Bell Telephone Company (SBC), a Texas limited partner with general and limited partners that are Delaware corporations. Ameren sued SBC to recover a $1,950,000 settlement paid by Ameren to the family of Jesse James, an SBC subcontractor's employee, for death resulting from electrocution on a wooden utility pole owned by SBC and covered by the Joint Use Agreement.

The parties each moved for summary judgment. The District Court denied Ameren's motion and granted summary judgment to SBC. For reversal, Ameren argues that the plain language of the Joint Use Agreement requires judgment in its favor. We reverse, order judgment on liability in Ameren's favor, and remand for trial only on the issue of the reasonableness of Ameren's settlement.

## I.    BACKGROUND

By written agreement dated December 5, 1994, the predecessor of SBC and Ameren entered into a Joint Use Agreement which granted each company the right to use various utility transmission poles of the other located in Missouri. The agreement outlined the rights and obligations of each party to the other. Ameren provides electricity through its transmission lines. SBC has low voltage lines it uses in the provision of telephone and other services to its customers. Lines are hung by both parties on their own utility poles and on poles owned by the other.

On March 18, 1995, SBC dispatched a contractor to repair a downed SBC cable. Jesse James, one of the contractor's employees, went up in a truck boom bucket to attach telephone cable to the utility pole. James was fatally electrocuted when he came into contact with Ameren's ground wire. This wire was energized because the ground wire had been cut with a six to eight foot section missing and sections of neutral wire were also missing.

Jesse James' three minor children brought a wrongful death action against Ameren and SBC in the Missouri state courts. Ameren sought indemnity and a

defense from SBC pursuant to the Joint Use Agreement. SBC was granted summary judgment in the state court case because James was an employee of an independent contractor covered by worker's compensation, and SBC did not exercise control over the work being performed by James. James v. Union Electric Co., 978 S.W. 2d 372 (Mo. Ct. App. 1998). SBC declined to defend Ameren. Thereafter, Ameren settled the case with the three minor children for $650,000 each, which settlement was approved by the state court on June 23, 1997. Ameren also seeks the costs of its defense of the James litigation in the amount of $113,156.41.

The indemnity provision in the Joint Use Agreement provides:

> Each of the parties hereto assumes the risk of liability for any and all injuries to its own employees, agents, contractors or customers and shall indemnify, protect and save harmless the other party to this agreement or any other licensees, irrespective of their own negligence, from any and all such claims, damages (including punitive damages), suits, judgments, liabilities, loss, court costs and expenses, including attorney's fees, and for damages to or loss of any property of said employees, agents, contractors or customers arising form the exercise of any rights conferred by this agreement.

Joint Use Agreement at pages 8-9. The Joint Use Agreement was the product of negotiations between the parties and replaced a previous agreement from 1962 that had governed the relationship of the parties. It is undisputed that the Joint Use Agreement was in force at the time of Mr. James' death. The 1962 agreement differed from the Joint Use Agreement in that the 1962 agreement specifically limited indemnity to instances where an injured party was on the other company's utility pole. The parties disagree about the substance of the negotiations between their attorneys but the limitation in the previous agreement relating to pole ownership does not appear in the Joint Use Agreement. The District Court reasoned that since James was on an SBC utility pole at the time of his death, SBC was not exercising any rights conferred by the Joint Use Agreement. Thus, SBC had the right to work on its own

utility pole regardless of the Joint Use Agreement. The Court held that the Joint Use Agreement had no application when an SBC subcontractor was working on an SBC pole. The Court granted SBC's motion for summary judgment and denied Ameren's motion. This appeal followed.

## II.    DISCUSSION
### A.    Standard of Review

We review a district court's grant of summary judgment de novo applying the same standard as the district court. Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir. 2003). This Court determines whether the evidence, when viewed in the light most favorable to the non-moving party, and according it the benefit of all reasonable inferences, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Id. We apply the law of the state of Missouri because it is the forum state. Miller v. Pilgrim's Pride Corp., 366 F.3d 672, 673 (8th Cir. 2004). The parties apparently agree that the application of Missouri law is proper. The district court's interpretation of Missouri law is also reviewed de novo. Sligo, Inc. v. Nevois, 84 F.3d 1014, 1019 (8th Cir. 1996). An appellate court has the authority under 28 U.S.C. § 2106 to reverse summary judgment in favor of one party and to grant summary judgment on the issue of liability in favor of another party if no relevant factual dispute exists. See Fabric v. Provident Life & Accident Ins. Co. 115 F.3d 908, 915 (11th Cir. 1997) (appellate court has the authority under 28 U.S.C. § 2106 to order summary judgment even where a party did not move for it if the record on the issue is sufficiently developed).

### B.    Indemnity Agreement

The rules applicable to the construction of contracts apply generally to indemnity agreements. Chehval v. St. John's Mercy Med. Ctr., 958 S.W.2d 36, 38 (Mo. Ct. App. 1997). The interpretation of a written contract is a matter of law for the court. Sligo, 84 F.3d at 1019. Whether the contract language is ambiguous is also a question of law. Id. To determine whether a contract is ambiguous the court must

-4-

consider the entire written agreement and give words their ordinary and usual meaning. Id. Under Missouri law, an indemnity agreement is enforceable if the agreement is clear and unequivocal, the provision applies to the claim in question, and the agreement was not signed under duress. Schaefer v. Spider Staging Corp., 275 F.3d 735, 739 (8th Cir. 2002) (applying Missouri law). Further, an agreement seeking indemnity against one's own negligence is enforceable if the contract was formed in a commercial setting by parties on substantially equal footing expressed in clear and unambiguous terms. United States Fid. & Guar. Co. v. Hous. Auth. of the City of Poplar Bluff, Mo., 114 F.3d 693, 696 (8th Cir. 1997).

By the agreement's plain language the parties each assumes the risk for all injuries to their respective employees, agents, contractors or customers, and each agrees to indemnify, protect and save harmless the other party, irrespective of that party's own negligence for all claims, including punitive damages and attorney's fees arising from the exercise of any rights under the agreement. Jesse James was an employee of a contractor of SBC. Ameren is the other party to be protected and indemnified by SBC for claims for injuries to SBC's employees. The negligence of either SBC or Amerern is irrelevant as between them, it mattering only whether James was SBC's or Ameren's contractor's employee.

The only question remaining regarding liability is whether the accident arose because of the exercise of any rights conferred by the agreement. SBC contends that it was not exercising any rights under the agreement since it had access to its own utility pole regardless of the existence of the indemnity agreement. This analysis misses the point. Absent the agreement, Ameren's energized high voltage lines would not have been placed or remained on the SBC utility pole since without the agreement it would have been a trespasser. Thus, Ameren was exercising rights conferred by the agreement and the indemnity clause applies.

The "indemnification was broad, but it was specific." United States Fidelity, 114 F.3d at 696. These are two commercial entities with apparently equal bargaining power and well-represented in the negotiation process. An agreement making each of these large commercial entities responsible for injuries to their own customers, agents, contractors and employees is a sensible allocation of loss because each is in a better position to protect and insure against those losses by virtue of the ability to instruct and train those persons who access the poles with their permission. Ameren and SBC have little or no ability to control, train or instruct the customers, agents, contractors and employees of the other. We decline to reallocate the risk by inferring additional terms in the Joint Use Agreement.

SBC was simply in the best position to see that its contractor's employee was not injured and to insure against losses arising from its operations. This view is supported by review of the previous agreement between the parties. The 1962 agreement limited indemnity to those instances "arising out of work performed on the poles and structures owned by the other party in joint use under this contract." A plain reading of the Joint Use Agreement, on the other hand, confers indemnity for damages "arising from the exercise of any rights conferred by [the] agreement." The triggering event is joint use, not ownership. This view is consistent with the holding in Schaefer, 275 F.3d at 739. In Schaefer, an equipment rental agreement between an equipment rental company and a roofing company included an indemnity agreement with similar broad language. Id. at 738. The equipment rental company was to be indemnified even for its own negligence if any of the roofer's employees were injured. Id. This Court affirmed summary judgment in favor of the equipment company because the agreement was clear, the provision applied to the claim, and the agreement was not signed under duress, all as required by Missouri law. Id. at 739.

**C.    SBC Defenses**

SBC raised a number of affirmative defenses to Ameren's claim for indemnity which we discuss below.  We conclude all but one of the defenses raised by SBC lack merit.  Because, as explained below, a fact finder must find the settlement was reasonable and made in good faith, we remand for a trial only on this issue.

1.    Laches

SBC contends that Ameren's action is barred by the equitable doctrine of laches.  James was electrocuted on March 18, 1995.  Ameren's settlement with the James children was approved on June 23, 1997.  Ameren filed its action for indemnity on February 6, 2002.  The parties do not dispute that the action was brought within the statute of limitations; however, SBC contends that the death of one of Ameren's employees present at the accident scene resulted in the loss of testimony about the condition of Ameren's facilities on the day of James' death.  Similarly, SBC asserts that its subcontractor was unable to locate its file relating to the accident at this late date.

This is an action for money damages pursuant to a contract of indemnity between the parties. The doctrine of laches does not bar a suit brought within the statute limitations absent extraordinary facts warranting relief. Empiregas, Inc. of Palmyra v. Zinn, 833 S.W.2d 449, 451 (Mo. Ct. App. 1992).  We believe the loss of evidence is tangential, at best, to the issue of the reasonableness of the settlement to be tried on remand.  The negligence of either party is not an issue between SBC and Ameren under the terms of the Joint Use Agreement since each party agrees to pay irrespective of negligence for injury to customers, agents, contractors or employees of the other.  The evidence can only be relevant to the issue of the reasonableness of the settlement if it shows the conscious pain and suffering of James prior to his death

or the effect of James' or Ameren's comparative fault in the calculation of damages. SBC was in as good or better a position to preserve this lost evidence as Ameren because SBC had a contractual relationship with its contractor. The James litigation in the state court named both Ameren and SBC as defendants. Ameren notified SBC that it had been sued in the James state court litigation on April 13, 1995. In James v. Union Electric Co., the trial court, on July 7, 1997, granted SBC's motion to dismiss for lack of jurisdiction and denied the summary judgment motion as moot. On appeal, the Missouri Court of Appeals reversed the dismissal for lack of subject matter jurisdiction and granted summary judgment. See James v. Union Electric Co., 978 S.W.2d 372, 374, 377 (Mo. Ct. App. 1998). From the time of Ameren's notice to SBC in 1995 until summary judgment was granted in its favor, SBC could have been preserving this now missing evidence by seeking the deposition of the employees at the scene. Further, prior to that time, SBC could have taken any employee's deposition in the state case and should have secured its contractor's file in anticipation of both the state claim and this action. A party seeking equity must do equity. City Investing Co. v. Davis, 334 S.W. 2d 63, 67 (Mo. 1960). This includes preservation of potential evidence. We do not believe that these circumstances present such extraordinary facts so as to apply the doctrine of laches when the statute of limitations has not yet run.

2.    Unclean Hands

SBC also urges that Ameren's contractual damages claim is defeated by the doctrine of "unclean hands." SBC asserts that the death of James was a direct result of Ameren's failure to adhere to the National Electric Safety Code. The Joint Use Agreement provides: "the joint use poles covered by the agreement shall at all times be in conformity with the National Electric Safety Code . . . ". Thus, SBC argues a plaintiff is prohibited from proceeding on its equitable claim if it has been guilty of inequitable conduct. In this case, the inequitable conduct is the failure to follow the requirements of the National Electric Safety Code.

We find SBC's arguments unpersuasive for the same reasons that the laches defense fails. The "clean hands" doctrine does not bar a claim for money damages. Marvin E. Nieberg Real Estate Co. v. Taylor-Morley-Simon, Inc., 867 S.W.2d 618, 626 (Mo. Ct. App. 1993). Only when a plaintiff's conduct is the source of the claim is the equitable claim barred. Kay v. Vatterott, 657 S.W.2d 80, 82 (Mo. Ct. App. 1983). In this case, Ameren's claim for money damages arises from its contract of indemnity with SBC. Ameren's possible negligence in failing to follow the National Electric Safety Code as alleged by SBC is not the source of its right to proceed. That right sounds in the contract between the parties.

Furthermore, the SBC construction implies a pre-condition (compliance with the Code) to Ameren's claim for indemnity. Missouri law does not favor conditions precedent. James E. Brady & Co., Inc. v. Eno, 992 F.2d 864, 869 (8th Cir. 1993). The parties purport to indemnify the other irrespective of any of their own negligence. Had the parties wished to require compliance with the Code as a precondition to liability under the Joint Use Agreement, they could have said so. Even assuming Ameren was reckless in its failure to follow the National Electric Safety Code, as we must for the purposes of entering judgment in Ameren's favor on liability, the Joint Use Agreement is broad enough to cover those actions since the agreement provides indemnification even for punitive damages. Where two sophisticated commercial enterprises allocate their risk of loss by contract as between them, no public policy is violated. Purcell Tire & Rubber Co., Inc. v. Executive Beechcraft, Inc., 59 S.W. 3d 505 (Mo. 2001). For these reasons, we find SBC's affirmative defense of "unclean hands" lacks merit.

3. Increase in Risk

SBC contends that there are material factual issues as to whether Ameren failed to protect SBC and increased its risk of loss to third parties by conditions under Ameren's control. There is no dispute that SBC sent its contractor to the scene that night, not Ameren. The parties were well aware of the existence of the high voltage

lines. They allocated the risk of any loss to employees and contractor employees by way of the agreement, even for claims for punitive damages. Thus, we cannot see that there is any issue of fact here to try.

       4.     Reasonableness of Ameren Settlement

Ameren settled the James litigation by payments of $650,000 to each of James' children. The settlement was approved by the state court. While there is no Missouri case law directly on point, one Missouri court applying New York law has analyzed whether an indemnitor is bound by an indemnitee's settlement. Int'l Minerals & Chem. Corp. v. Avon Products, Inc., 889 S.W.2d 111 (Mo. Ct. App. 1994). The court stated: "when an indemnitor has notice of the underlying action against the indemnitee and declines to defend that action, the indemnitor is conclusively bound by any reasonable good faith settlement the indemnitee may make." Id. at 118. (citing Feuer v. Menkes Feuer, Inc., 187 N.Y.S.2d 116, 121 (N.Y. App. Div. 1959)). The indemnitee has the burden of establishing that the settlement was reasonable and made in good faith. Id.

The Missouri court followed the reasoning of this circuit in Burlington Northern, Inc. v. Hughes Bros., Inc., 671 F.2d 279, 282 (8th Cir. 1982). In Burlington Northern, an action was brought for interpretation of a "sidetrack" agreement between the railroad and an industry served by the sidetrack. The agreement provided for payment by the industry to the railroad for any loss or damage paid by the railroad to any of the railroad's employees when those injuries were caused by the industry. Id. at 279. Following a jury verdict in favor of the industry, the railroad appealed. In reversing the verdict, this Court reasoned that a party seeking indemnity must show that the settlement was in good faith and reasonable. In evaluating the reasonableness of the settlement, the fact finder ought to compare the nature of the injury and damages to the size of the settlement. Id. at 282. The fact finder must also evaluate the good faith of the settling party by considering the probability that it would have been liable. Id. The party seeking indemnity need only

prove its potential liability and that the settlement was reasonably related to the employee's injuries. Id.  If the jury determines the amount was not reasonable it should determine what amount would have been proper. Burlington Northern, 671 F.2d at 282.  Because the reasonableness of the settlement has not been determined by a fact finder, we remand for a trial on the issue of the reasonableness of Ameren's settlement.

## III.   CONCLUSION

For these reasons, we reverse the district court's judgment in favor of SBC, direct judgment on the issue of liability in favor of Ameren, and remand to the district court for trial on the issue of the reasonableness of Ameren's settlement with the James children.

_____