STATE ex rel. PAINEWEBBER, INC., and Nickolas N. Betta, Relators,

v.

Honorable Alphonso H. VOORHEES, Judge, Circuit Court, St. Louis County, Respondent.

No. 77069.

Supreme Court of Missouri, En Banc.

Jan. 24, 1995.

Thomas Walsh, Leo J. Asaro, St. Louis, for relators.

David G. Dempsey, St. Louis, for respondent.

BENTON, Judge.

Relators PaineWebber, Inc., and Nickolas N. Betta seek to prohibit litigation and com-

pel arbitration of Janet M. Leslie's claims for breach of fiduciary duty. This Court issued a preliminary order for relators, now made absolute.

## I.

Leslie signed two PaineWebber account agreements. Right above both her signatures, in bold-face type is: **"This Agreement contains a pre-dispute arbitration clause ...,"** ending with the clause's page and paragraph numbers. The clause requires arbitration of "any and all controversies ... concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement" between Leslie and PaineWebber.

Later, Leslie sued PaineWebber and Betta for breach of fiduciary duty in her securities transactions. Invoking the arbitration clauses, relators moved to stay Leslie's lawsuit and compel arbitration. Leslie countered with an affidavit, alleging that she was "completely misled" by Betta about the two forms.

The circuit court overruled relators' motion to stay litigation and compel arbitration; the court of appeals denied prohibition. Relators, in this Court, renew their request to stay the underlying case until after arbitration.

## II.

■ By the United States Arbitration Act, a court must enforce written agreements to arbitrate later disputes about contracts involving commerce. *9 U.S.C. § 2; see Bunge Corp. v. Perryville Feed & Produce, Inc.,* 685 S.W.2d 837, 839 (Mo. banc 1985). The agreements here are written and affect interstate commerce. *See Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 478, 109 S.Ct. 1917, 1918–19, 104 L.Ed.2d 526 (1989). The only question is: Did Leslie and PaineWebber contract to arbitrate the dispute? *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985); *9 U.S.C. §§ 2, 4.* If they did, a court must stay the lawsuit; if not, the Arbitration Act is not triggered and the lawsuit proceeds. *9 U.S.C. § 3; Volt Information Sciences, Inc. v. Board of Trust-*

*ees of Leland Stanford Junior University,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). In answering this question, state law applies; the burden is on the party resisting arbitration. *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987); *Bhatia v. Johnston,* 818 F.2d 418, 422 (5th Cir.1987).

All parties agree that Leslie signed the two agreements, that her claims are within the scope of the arbitration clauses, that she was under neither duress nor coercion, and that she was able to read the agreements. Leslie claims, however, that she never assented to the agreements because Betta fraudulently procured her signatures. Thus, respondent argues, Leslie never consented to arbitration.

Respondent relies on the Restatement's definition of fraud in the procurement, which requires: (1) a misrepresentation, (2) as to the character or essential terms of a proposed contract, (3) that induces assent, (4) by one who neither knows, nor had a reasonable opportunity to know, of the character or essential terms of the contract. *Restatement (Second) of Contracts, § 163.*

■ This Court has not previously adopted Restatement § 163 on fraud in the procurement, but in general requires nine elements for fraud: a representation; that is false; that is material; the speaker's knowledge of its falsity or ignorance of its truth; the speaker's intent it be acted on; the hearer's ignorance of the falsity of the representation; the hearer's reliance; the hearer's right to rely on it; and injury. *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988). The circumstances of each element must be stated with particularity. *See id.; Rule 55.15.*

This Court need not decide whether Restatement § 163 applies because, as shown below, respondent fails to establish fraud in the procurement under either § 163 or this Court's general test.

## III.

Respondent's only evidence is Leslie's affidavit, stating that she has a ninth grade

education, was inexperienced in financial matters before her first spouse died when she "received a lot of money," and that she "believed everything" Betta told her. The affidavit continues with three statements that could possibly be fraud in the procurement.

### A.

■ *Statement A:* Nick told me that whatever he asked me to sign were routine forms that I had to sign in order to be able to write checks against my account. When I signed the Resource Management Account Agreement, I thought the word "Resource" tied in with my signing checks. The words "Money Accounts," "Master Card(s)," "Preferred Card," and "Gold Card" gave me the impression that this form covered only my use of the account for checks and possibly for a charge card if I wanted one. As far as I am concerned, that was the only thing I was agreeing to when I signed both forms.

Leslie signed two agreements. The Resource Management Account Agreement was required for check-writing, so Betta's alleged statement about it was true, and thus not a misrepresentation. *See Restatement (Second) of Contracts § 159* (misrepresentation is "an assertion not in accord with the facts"); *Heberer*, 744 S.W.2d at 443 (no fraud absent false representation).

True, the other agreement does not reference check-writing. Even if that agreement was unnecessary for check-writing and Betta implied it was necessary, Leslie's affidavit does not establish fraud in the procurement. There is no evidence that Leslie could not reasonably have known that the agreement went beyond check-writing. In fact, Leslie could have ended her ignorance (of the falsity of Betta's implication) by reading the agreement. *See Sanger v. Yellow Cab Co.*, 486 S.W.2d 477, 481 (Mo. banc 1972). On this record, the first statement does not establish fraud in the procurement. *See Restatement (Second) Contracts § 163; Heberer*, 744 S.W.2d at 443.

### B.

■ *Statement B:* Nick did not say one word to me about either agreement requir-

ing me to arbitrate or giving PaineWebber the right to borrow against my money.

Right above Leslie's signature, both agreements include bold-faced references to the arbitration clauses, with page and paragraph citations. The loan provision also has this bold-faced type directly above the signature line:

**Loan Consent**

24. **BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT YOU AND YOUR SUCCESSORS AND ASSIGNS ARE AUTHORIZED IN THE USUAL COURSE OF BUSINESS TO LEND, RELEND, HYPOTHECATE, REHYPOTHECATE, PLEDGE OR REPLEDGE SEPARATELY OR TOGETHER WITH THE PROPERTY OF OTHERS EITHER TO YOURSELVES OR TO OTHERS ANY PROPERTY WHICH YOU MAY BE CARRYING FOR ME ON MARGIN. THIS AUTHORIZATION SHALL APPLY TO ALL ACCOUNTS CARRIED BY YOU FOR ME AND SHALL REMAIN IN FULL FORCE UNTIL WRITTEN NOTICE OF REVOCATION IS RECEIVED BY YOU.**

**BY SIGNING THIS AGREEMENT THE CUSTOMER ACKNOWLEDGES THAT:**

1. **THE SECURITIES IN THE CUSTOMER'S MARGIN ACCOUNT MAY BE LOANED TO THE BROKER OR LOANED OUT TO OTHERS AND;**

2. **THAT THE CUSTOMER HAS RECEIVED A COPY OF THIS AGREEMENT.**

**THIS AGREEMENT CONTAINS A PRE–DISPUTE ARBITRATION CLAUSE AT PAGE 1 AT PARAGRAPH 19.**

■ Silence or nondisclosure equals misrepresentation only when there is a duty to speak. *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. banc 1993); *see Restatement (Second) of Contracts § 161*. This duty arises either from a trustful, confidential relationship or where one party has superior information not reasonably available to the other. *Id.*

▮ In Missouri, stockbrokers owe customers a fiduciary duty. *Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 396 S.W.2d 570, 575 (Mo. banc 1965). This fiduciary duty includes at least these obligations: to manage the account as dictated by the customer's needs and objectives, to inform of risks in particular investments, to refrain from self-dealing, to follow order instructions, to disclose any self-interest, to stay abreast of market changes, and to explain strategies. *See Vogel v. A.G. Edwards & Sons, Inc.,* 801 S.W.2d 746, 751–52 (Mo.App. 1990).

▮ Implicit in these obligations is a duty to disclose to the customer material facts. *See* Carol R. Goforth, *Stockbrokers' Duties to Their Customers,* 33 St. Louis U.L.J. 407, 437 (1989). A stockbroker's duty to disclose material facts does not, however, include an obligation to discuss orally with a competent party conspicuous written provisions like the arbitration and loan clauses here. *See Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d 696, 701 (10th Cir.1989); *Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282, 287 (9th Cir.1988); *Curtis v. Newhard, Cook & Co.,* 725 F.Supp. 1072, 1075 (E.D.Mo.1989); *Gonick v. Drexel Burnham Lambert, Inc.,* 711 F.Supp. 981, 985 (N.D.Cal.1988); *Rosen v. Waldman,* No. 93 Civ. 225 (PKL), 1993 WL 403974 (S.D.N.Y. Oct. 7, 1993). *But see Woodyard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 640 F.Supp. 760, 766 (S.D.Tex.1986). Since Betta had no such obligation, his silence was not a misrepresentation, and thus not fraud in the procurement. *See Restatement (Second) Contracts § 161;· Andes,* 853 S.W.2d at 943.

### C.

▮ *Statement C:* I would never have signed either paper if I knew that it gave PaineWebber the right to make loans against my money. In fact, Nick told me the opposite; he told me that he was using PaineWebber's money to make me money. This is what I understood. I now know what "margin" means, and I look upon it as gambling with my money. So, I would not have agreed to gamble my money; and Nick Betta knew that. I was completely misled by what Nick told me about these forms.

▮ This statement fails to show fraud in the procurement. The loan provisions unambiguously establish PaineWebber's right to loan Leslie's securities, and are directly above her signature in bold-face all-capital type. Where a competent contracting party has a reasonable opportunity to know about the contract by reading it, statements by the other party (that do not prevent reading) are not usually a basis to void assent to the whole contract. *Restatement (Second) Contracts § 163 & illus. 3.; see Sanger v. Yellow Cab Co.,* 486 S.W.2d 477, 481 (Mo. banc 1972), *citing Higgins v. American Car Co.,* 22 S.W.2d 1043, 1044 (Mo. banc 1929). Thus, Betta's statements about the loan provisions do not constitute fraud in the procurement.

### IV.

▮ Because Leslie's claims against relators are arbitrable, the only remaining issue is the remedy. Prohibition lies where a court acts outside its authority. *State ex rel. Knipping v. Sweeney,* 850 S.W.2d 94, 96 (Mo. banc 1993). The Arbitration Act requires a court to stay a lawsuit pending arbitration where—as here—the parties agree in writing to arbitrate a dispute from a contract that involves commerce. *See 9 U.S.C. §§ 2, 3.* Thus, the trial court exceeded its authority when it denied a stay, and prohibition is proper.

### V.

The preliminary order is made absolute.

All concur.