**Kevin JOHNSON, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**LONG JOHN SILVER'S RESTAURANTS, INC., Defendant.**

No. 3:01–1526.

United States District Court, M.D. Tennessee, Nashville Division.

June 7, 2004.

Morris Reid Estes, Jr., Tanya B. Spavins, Stewart, Estes & Donnell, Nashville, TN, for Kevin Johnson, on behalf of himself and all others similarly-situated, plaintiff.

John K. Walkup, Wyatt, Tarrant & Combs, Nashville, John F. Dienelt, Piper, Marbury, Rudnick & Wolfe, LLP, Washington, DC, for Long John Silver's Restaurants, Inc., defendant.

### *MEMORANDUM*

WISEMAN, District Judge.

Pending before the Court are the following four motions: Defendant Long John Silver's Inc.'s ("Defendant" or "LJS") Motion to Compel Arbitration (Doc. No. 27–1), Defendant's Motion for Stay of this Litigation (Doc. No. 27–2), Plaintiff Kevin Johnson's ("Plaintiff" or "Mr. Johnson") Motion to Rescind Defendant's Arbitration Agreements (Doc. No. 68–1), and Plaintiff's Motion for a Case Status Conference (Doc. No. 135). Before addressing these motions, the Court will first provide an overview of the procedural posture of this case.

### I. Procedural Background

Mr. Johnson alleges that LJS violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Mr. Johnson worked as an Assistant General Manager and as a General Manager for LJS in Missouri from September 1998 through November 2000. During that time, Plaintiff was classified as an executive employee and was therefore exempt from the FLSA overtime pay requirements. However, as a condition of his employment, Plaintiff was required to comply with LJS's Restitution Policy. Under the Restitution Policy, any employee found responsible for a money or property loss was required to reimburse LJS through a payroll deduction. Plaintiff filed this suit, on behalf of himself and other

unnamed plaintiffs, alleging that Defendant's restitution policy violated the FLSA.

At some point near the beginning of this litigation, LJS informed Mr. Johnson, through his attorney, that he had signed an agreement to arbitrate as a condition of his employment. (April 16, 2004 Hr'g at 37–38.) As a result, the parties began settlement negotiations and entered a joint stay and tolling agreement, providing that the statute of limitations would be tolled with respect to all putative class members.[1] (Doc. No. 6.) Settlement talks failed, but the tolling agreement remained in place. At the Initial Case Management Conference, the Magistrate Judge determined that the principle issue before the Court was whether arbitration should be compelled. (Doc. No. 26.) The Magistrate Judge stayed all discovery, except that relating to the arbitration issue. Likewise, the Magistrate Judge concluded that the Court would not take up any issues regarding court supervised notice to class members until the arbitration issue had been resolved, reasoning that no prejudice to the class would result because of the tolling agreement.

As the litigation in this Court continued, Plaintiff's counsel filed the same complaint, but with different named plaintiffs, before the American Arbitration Association and requested a class arbitration (*Erin Cole and Nick Kauffman, et al. v. Long John Silver's, Inc, et al.*). This Court then held a Status Conference in the original lawsuit. LJS represented to the Court that it had requested AAA to stay arbitration pending the outcome of the case in Federal court, but the AAA took the position that, in the absence of an agreement between the parties, it would proceed with arbitration. (February 24, 2004 Hr'g at 3.) The Court noted the contradictory nature of Plaintiff's position, both resisting arbitration in this Court and then requesting arbitration with the AAA, but ultimately concluded that this Court had no power to enjoin the AAA and that this Court would retain the case and determine whether Mr. Johnson entered into an agreement to arbitrate. (Feb. 24 Hr'g at 2, 16–17, 28.) The Court held a hearing on April 16, 2004 to resolve the question, which will now be addressed below.

## II. Defendant's Motion to Compel

Defendant's Motions to Compel and to Stay Litigation and Plaintiff's Motion to Rescind Defendant's Arbitration Agreements all can be decided with the resolution of one issue. The issue is whether Mr. Johnson entered into a contract with LJS to arbitrate his claims. *See Burden v. Check Into Cash of Kentucky, LLC,* 267 F.3d 483, 487 (6th Cir.2001) ("Under the FAA, a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims"); *Fazio v. Lehman Bros.,* 340 F.3d 386 (6th Cir.2003) (appropriate areas of inquiry for a district court include whether the parties agreed to arbitrate, including any neutral basis for invalidating an arbitration agreement, and whether Congress intended the claim to be nonarbitrable). When analyzing a Motion to Compel Arbitration, a court must consider whether the statutory claim is generally subject to arbitration. *Floss v. Ryan's Family Steak Houses, Inc,* 211 F.3d 306, 311 (6th Cir. 2000). If the statutory claim is subject to arbitration, a court then considers whether the parties have executed a valid arbitration agreement and, if so, whether the

---

**1.** Throughout this Memorandum, the term 'class' is used to refer to the plaintiffs in a collective action brought under § 16(b) of the FLSA, 29 U.S.C. § 216(b).

claim falls within the scope of that agreement. *Id.* at 311–312.

## A. FLSA Claims Are Generally Subject to Arbitration

The Federal Arbitration Act ("FAA") provides that a contractual provision to arbitrate is valid and enforceable, unless "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is now well settled that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). However, not all statutory claims are amenable to mandatory arbitration; Congress may mandate a judicial forum or there may be an inherent conflict between arbitration and the underlying purposes of the statute. *See id.*

The Sixth Circuit recently considered a case factually similar to this one, where the issue was whether to compel arbitration in an FLSA case. *See id.* at 309. The Sixth Circuit, in addressing an agreement to arbitrate in a FLSA case, found the arbitration agreement invalid for vagueness, but discussed whether FLSA claims could be subject to arbitration generally. *See Floss,* 211 F.3d at 313. The Court stated:

> Though a claim under the FLSA certainly serves a purpose beyond providing relief to an individual claimant, we fail to see how the broader policies furthered by such a claim are hindered when that claim is resolved through arbitration ... [there is] no compelling reason for drawing a distinction between

these statutes [that the Supreme Court has already held are subject to arbitration] and the FLSA. *Id.* at 313.[2] At least three other Federal Courts of Appeals have subjected FLSA claims to arbitration. *See; e.g. Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 506 (4th Cir.2002) (finding that FLSA claims can properly be resolved in mandatory arbitration proceedings); *Bailey v. Ameriquest Mortgage Co.,* 346 F.3d 821 (8th Cir.2003) (same); *Horenstein v. Mortgage Market, Inc.,* 9 Fed.Appx. 618, 619, 2001 WL 502010 at \*2 (9th Cir.2001) (same).

█ Nowhere in the FLSA does Congress mandate a judicial forum. Moreover, the Sixth Circuit stated in *Floss* that FLSA claims can be resolved by arbitration. Therefore, the Court finds that the claim in this case is subject to arbitration.

## B. The Existence of a Contract

█ When a statutory claim is not exempt from arbitration, a court must consider whether the parties have executed a valid arbitration agreement and, if so, whether the claim falls within the scope of that agreement. *Floss,* 211 F.3d at 311–312. Neither party contests that a FLSA claim falls within the scope of the Agreement. In order to determine whether there is a valid agreement to arbitrate, courts employ traditional principles of state contract law. *See* 9 U.S.C. § 2. Because the outcome of this issue is so fact specific, the Court will next set forth the proof offered at the April 16, 2004 hearing.

### i. Proof at April 16, 2004 Hearing

The facts are relatively simple and undisputed. When Mr. Johnson was hired

---

**2.** Because the actual holding of the case was based on contractual principles, this language is dicta. However, other courts in the Middle District of Tennessee have found this language binding. *See Fisher v. GE Medical Sys.,* 276 F.Supp.2d 891, 894 (M.D.Tenn.2003) (J.

Trauger) (compelling arbitration in an FLSA case and reasoning that, "the Sixth Circuit has ruled ... that contractual arbitration agreements are enforceable as to claims arising under the FLSA.").

by LJS and continuing through the present, LJS required all employees to submit employment disputes to arbitration. A booklet describing the dispute resolution program, the Real Resolution Solution Program ("RRSP") was contained in a packet of materials given to new employees. (*See* Def.'s Mot. to Compel, Attach Ex. A–1 ("Booklet"), at 1.) Deborah Siewing, the district manager who hired Mr. Johnson, testified that the RRSP was contained in the policies and procedures manual, a copy of which is located in every restaurant. At the back of the RRSP booklet, there was a tear-out Real Resolution Solution Agreement ("RRSA") with a signature line acknowledging the terms of the RRSP. Every employee was required to sign the RRSA; LJS, however, has been unable to produce an agreement signed by Mr. Johnson.

Mr. Johnson testified that he submitted an application for employment to LJS and was hired as an assistant manager during a telephone interview by Ms. Siewing. Mr. Johnson testified that he later met Ms. Siewing at the 'Parker Road' LJS restaurant to "fill out some paperwork." (Apr. 16 Hr'g at 7.) The meeting took place during normal business hours and lasted approximately twenty minutes. Ms. Siewing testified that her standard orientation procedure was *inter alia* to open the package of new employee materials, provide an overview of the documents, ask the employee to read and review the forms, leave the employee to complete the forms, return and confirm that all forms were completed and signed, and finally to provide the employee with copies of relevant materials. Ms. Siewing stated that she would explain the RRSP and "really what it means in the four-step process . . . asking if [they] have any questions, letting them know that they are going to be held responsible for this program." (Apr. 16 Hr'g at 64.) Ms. Siewing testified that Mr. Johnson's paperwork contained a RRSP booklet and Agreement. She is certain of this fact because she was required to complete a check list that all forms had been completed and she would remember if she did not have a signed agreement for Mr. Johnson. The Court finds Ms. Siewing's testimony credible based on her demeanor at the hearing, because she has no personal interest in this litigation, and because she testified to her customary practice including her interaction with Mr. Johnson.

Mr. Johnson testified that Ms. Siewing handed him a stack of paperwork and left him alone to read and fill out the forms. Mr. Johnson testified that he signed and completed each of the documents presented to him. However, he did not specifically remember signing an agreement to arbitrate and he stated that he did not leave the restaurant with any documents. Mr. Johnson testified that while he was filling out the paperwork, the restaurant's general manager Diane, whose last name he could not remember, instructed him to fill in the blanks on the paperwork and sign the documents. On these points, the Court finds Mr. Johnson's testimony credible and notes that his account does not conflict with Ms. Siewing's. Mr. Johnson stated that no one explained the RRSP to him or explained that he was waiving his right to a jury trial.

Mr. Johnson was later promoted to a restaurant manager position. As a restaurant manager, Mr. Johnson was responsible for hiring 10 to 14 hourly employees and conducting new employee orientation. Mr. Johnson testified that he did not receive any training on how to hire or orient new employees. However, Mr. Johnson also testified that he was responsible for obtaining signed RRSA forms from all new employees and for answering questions about the RRSP. He was aware that new employees were not allowed to begin work without signing the RRSA. At the April 16, 2004 hearing, it appeared that Mr. John-

son tried to draw a distinction between minors and other employees, suggesting that he thought only minors had to sign the RRSA. However, the Court clarified the point and asked Mr. Johnson, "If you hired somebody over 18 and they had refused to sign that form, you wouldn't have hired them?" (Apr. 16 Hr'g at 52–53.) Mr Johnson responded, "No, sir, I don't believe I could have." (*Id.* at 53.) He was also aware that if the new employee was under the age of 18, the RRSA had to be signed by a parent or guardian. In fact, Mr. Johnson hired a minor employee and had to obtain his parent's signature on the RRSA. The parent called Mr. Johnson asking about the RRSP, and Mr. Johnson explained that the RRSA would have to be signed before the employee could begin work. Mr. Mendez, Mr. Johnson's district manager, testified that Mr. Johnson told him that the conversation with the parent lasted thirty minutes, and he had to explain the four steps to her and the mother later called Mr. Johnson back for further clarification. Furthermore, Mr. Johnson testified that he gave the RRSP booklet to new employees to take home.

*ii. Legal Standards* [3]

LJS argues that Mr. Johnson signed an agreement to arbitrate. Plaintiff argues that he never signed an agreement to arbitrate and that, if he did, he did not know what he was signing. LJS also argues that, even though it cannot produce an agreement to arbitrate signed by Mr. Johnson, that there was an implied in fact contract.

██ In order to determine whether there is a valid agreement to arbitrate, courts employ traditional principles of state contract law. *See* 9 U.S.C. § 2. Even when applying state contract law, a court must consider the strong federal policy favoring arbitration.[4] *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Any doubts about whether an agreement is enforceable, including defenses to arbitrability, should be resolved in favor of arbitration. *Id.* The Sixth Circuit has stated, "absent a showing of fraud, duress, mistake, or some other ground upon which a contract may be voided."[5] *McMullen v. Meijer, Inc.,* 355 F.3d

**3.** While the basic contractual principles in Tennessee, the forum state, and Missouri, the place of contracting, are the same, there is a conflict of laws in the resolution of motions to compel agreements to arbitrate in the employment context. A court applying Tennessee contract law recently found a "take-it-or-leave-it" agreement to arbitrate an employment dispute unconscionable, *Cooper v. MRM Investment Co.,* 199 F.Supp.2d 771 (M.D.Tenn.2002), while a court applying Missouri law found the opposite on substantially similar facts, *Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677 (8th Cir.2001). The contract at issue contains a choice of law clause stating that "[t]he arbitrator shall apply the substantive law (and the laws of remedies, if applicable), of the state where the claim arose," which is Missouri. (Def.'s Mot. to Compel, Attach Ex. A–1, at 1.) Alternatively, under the forum state's choice of law principles, Missouri law applies. *See Vantage Tech., LLC v. Cross,* 17 S.W.3d 637, 650 (Tenn.Ct.

App.1999) (construction and validity of contract are governed by the law of the place where the contract was made).

**4.** Missouri has specific legislation devoted to arbitration agreements. Mo.Rev.Stat. § 435.350, *et seq.* Under § 435.460, an agreement to arbitrate is not enforceable unless it contains a specific notice provision above the signature line. However, that requirement is preempted by the Federal Arbitration Act. *Duggan v. Zip Mail Servs., Inc.,* 920 S.W.2d 200, 203 (Mo.App.1996).

**5.** Plaintiff argues that there can be no agreement to arbitrate here because the FAA requires that all such agreements be in writing and that Defendant has not produced such an agreement. 29 U.S.C. § 3. Plaintiff's argument must fail, however, because the agreement need not be signed. *See Fisher v. GE Medical Sys.,* 276 F.Supp.2d 891, 895 (M.D.Tenn.2003); *Tinder v. Pinkerton Securi-*

485, 490 (6th Cir.2004). The party seeking to compel arbitration bears the burden of establishing the existence of an agreement to arbitrate by a preponderance of the evidence.[6] *See Smith v. Hammons*, 63 S.W.3d 320 (Mo.App.2002) (the party seeking to establish the existence of agreement has the burden of proof); *Lawing v. Interstate Budget Motel, Inc.*, 655 S.W.2d 774 (Mo.App.1983) (party must prove the existence of the contract by a preponderance of the evidence).

■ Under the most basic principles of contract law, a contract exists when there is offer, acceptance, and consideration. *See Tinucci v. R.V. Evans Co.*, 989 S.W.2d 181, 184 (Mo.App.1999). A contractual relationship can arise when circumstances, acts, and conduct of parties support a reasonable inference of mutual understanding and agreement. *Marro v. Daniels*, 914 S.W.2d 16 (Mo.App. 1995). The agreement arises from the parties' intentions, presumed from their non-explicit language or conduct. *Id.; Westerhold v. Mullenix Corp.*, 777 S.W.2d 257 (Mo.App.1989); *see Foster v. Sears, Roebuck & Co.*, 837 F.Supp. 1006, 1008 (W.D.Mo.1993) (applying contractual principle of estoppel to arbitration agreement); *Ludwig v. Marion Labs., Inc.*, 465 F.2d 114 (8th Cir.1972) (it may be inferred that parties impliedly agreed to arbitrate). Moreover, under Missouri law, a person who has an opportunity to read a document but signs it without doing so is held to have knowledge of the document's contents, absent a showing of fraud.

*Midwest Printing, Inc. v. AM Int'l, Inc.*, 108 F.3d 168, 170 (8th Cir.1997).

■ Several parts of the testimony lead the Court to conclude that Mr. Johnson did in fact enter into an agreement to arbitrate with LJS. It is more likely than not that Mr. Johnson signed an agreement to arbitrate on the day he filled out his paperwork. Mr. Johnson does not remember any paperwork he signed, but admits that he did sign all paperwork that was put before him. Ms. Siewing testified that Mr. Johnson must have signed a RRSA according to standard procedure and that she would have remembered if he did not sign it.

Even if the Court were not persuaded that Mr. Johnson signed the RRSA during his orientation, the Court would conclude that there was an implied in fact agreement to arbitrate. For the entire length of his employment, Mr. Johnson had access to the RRSP booklet, a copy of which was placed in each restaurant. Mr. Johnson, as a restaurant manager, knew that all employees had to sign a RRSA before beginning work. Mr. Johnson even explained the RRSP to the mother of a minor employee. Although Mr. Johnson attempted to minimize the importance of his contact with the mother, the Court expects that Mr. Johnson would have, at a minimum, examined the RRSA in order to explain it to her. The Court also observes that Mr. Johnson's attempt to distinguish between hourly and salaried employee's requirements to sign the RRSA was disingenuous. At any point, Mr. Johnson could

ty, 305 F.3d 728, 736 (7th Cir.2002); *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir.1987) ("It is established that a party may be bound by an agreement to arbitrate even in the absence of his signature."). Defendant has produced a written agreement to arbitrate that is not signed by Mr. Johnson but which it claims contains the same terms as the one Mr. Johnson signed.

**6.** Plaintiff argues that Defendant should have to prove the existence of the contract by clear and convincing evidence under Missouri law. However, this higher standard governs actions for specific performance of oral agreements. *McDowell v. Kearns*, 758 S.W.2d 481, 482 (Mo.App.1988).

have quit working if he did not want to arbitrate his claims. Mr. Johnson is charged with knowledge of the RRSP and cannot now be heard to argue that he did not agree to the RRSP and its terms.

## C. Unconscionability

### i. *The RRSP and the RRSA*

█ A contractual agreement to arbitrate should be enforced "absent a showing of fraud, duress, mistake." *McMullen v. Meijer, Inc.*, 355 F.3d 485, 490 (6th Cir. 2004). Plaintiff argues that, even if Mr. Johnson did enter into an agreement to arbitrate, the agreement should be voided because it was unconscionable. Plaintiff argues that the RRSA is a form contract, that there was unequal bargaining position between the parties, that the agreement was presented for signature post-employment, that LJS did not present the terms of the contract, disclose its material terms, explain the significance of the terms, or give Mr. Johnson time to reflect before signing. Before exploring the applicable legal standards, the Court will set forth the terms of the RRSP and the RRSA.

The RRSP is described in detail in the booklet Defendant distributes to employees. The RRSP is composed of a four-step process, the last step of which is mandatory arbitration. The RRSP booklet sets forth the arbitration scheme in detail. It provides that arbitration will be governed by the American Arbitration Association ("AAA") procedures. After a request for arbitration is filed, the AAA sends each party a list of 20 potential arbitrators. Each party can then strike names and rank the remaining potential arbitrators. The total cost of arbitration for the employee, including the filing fee, will not exceed $350. The employee can pay the fee or elect a payroll deduction. Each party is permitted one deposition. The RRSP states that the arbitration agreement cannot be unilaterally changed, but

can be modified by mutual consent in writing. Remedies include "anything [an employee] might seek through a court of law." (Booklet at 6.)

At the end of the RRSP, there is a tear-out page titled, "The Real Agreement" ("RRSA"). The RRSA encapsulates the contents of the RRSP. It has a signature line for the new employee and a separate line for the signature of a company representative. The RRSA states, "In signing this Agreement, both the Company and I agree that all claims or disputes covered by this Agreement must be submitted to binding arbitration and that this binding arbitration will be the sole and exclusive remedy." (Booklet at 13.)

### ii. *Unconscionability Standard*

 A contract is invalid when there is both procedural and substantive unconscionability. *Funding Sys. Leasing Corp. v. King Louie Int'l, Inc.*, 597 S.W.2d 624, 634–35 (Mo.App.1979) (adopting Professor Leff's test set forth in *Unconscionability and the Code—The Emperor's New Clause*, 115 U.Pa. L.Rev. 485 (1967)). Procedural unconscionability arises during the contracting process when there is fine print in the contract, there has been some misrepresentation, or there is unequal bargaining power. *World Enterprises, Inc. v. Midcoast Aviation Servs., Inc.*, 713 S.W.2d 606 (Mo.App.1986). Substantive unconscionability, on the other hand, occurs when the contractual terms are unduly harsh. *Id.; Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943 (8th Cir. 2001). Provisions that an objective reasonable person would find unexpected and unconscionably unfair are unenforceable. *Hartland*, 770 S.W.2d at 527–28. Stated differently, a contract is unconscionable which no man in his right senses would make on the one hand and which no fair honest man would accept on the other.

*Lyster,* 239 F.3d at 946; *J.J. Newberry Co. v. Mixon,* 440 F.Supp. 20 (E.D.Mo.1977).

■■■ Procedural and substantive unconscionability are considered on a sliding scale, so that when more substantive unconscionability is present less procedural unconscionability is necessary to invalidate a contract and vice versa. *Funding Sys.,* 597 S.W.2d at 634–45. In Missouri, an adhesion contract is defined as a form contract created and imposed by a stronger party upon a weaker party on a take-it-or-leave-it basis. *Hartland Computer Leasing Corp., Inc. v. Insurance Man, Inc.,* 770 S.W.2d 525, 527 (Mo.App.1989). Adhesion contracts are not automatically invalid. *Id.; U.S. Fidelity and Guar. Co. v. Housing Authority of City of Poplar Bluff,* 885 F.Supp. 194, 196 (E.D.Mo.1995). Rather, courts seek to enforce the reasonable expectations of the parties garnered from the words of the contract as well as from the totality of the circumstances. *Hartland,* 770 S.W.2d at 527. For example, a clause barring consequential damages in fine print on the back of a contract was held unconscionable. *Oldham's Farm Sausage Co. v. Salco, Inc.,* 633 S.W.2d 177, 181 (Mo.App.1982) (stating, "If ever there was an example of the expression "burying something in fine print," it is graphically illustrated here.") However, when a clause in a form contract was capitalized and underscored, and when both parties were commercial entities with a history of contracting with each other, there was no unconscionability and the clause was enforced. *World Enterprises,* 713 S.W.2d at 611.

One recent Missouri case addresses unconscionability in an agreement to arbitrate. In *Swain v. Auto Services, Inc.,* 128 S.W.3d 103 (Mo.App.2004), the Court determined that an agreement to arbitrate in an adhesion contract relating to a car warranty was not unconscionable and enforced arbitration. The Court observed that the contract was not negotiable and that the car dealership filled out the contract, did not offer the plaintiff a chance to read it, and did not discuss the terms of the contract. *Swain,* 128 S.W.3d 103, 105. The Court also observed that the plaintiff was unaware of the arbitration clause when he signed the contract. *Id.* Still, the Court concluded that "the average person would reasonably expect that disputes arising out of an agreement like this might have to be resolved in arbitration" and therefore found no unconscionability and compelled arbitration. *Id.* at 107–08; *see also Lyster,* 239 F.3d at 944, 947 (compelling arbitration when employee signed agreement to arbitrate at the time she applied for employment and reasoning that there was no unconscionability because the contractual terms were not unduly harsh).

A Missouri Supreme Court decision speaks directly to what extent an agreement to arbitrate must be explained. *See State ex rel. PaineWebber, Inc. v. Voorhees,* 891 S.W.2d 126, 130 (Mo.1995) (en banc). In that case, a customer argued that the arbitration provision in her brokerage account should not be enforced because the provision was never pointed out or explained to her. *Id.* The Missouri Supreme Court compelled arbitration, stating there is no "obligation to discuss orally with a competent party conspicuous written provisions like the arbitration ... clause[ ] here." *Id.*

■■■ After reviewing the Missouri case law, especially the *Swain* and *Voorhees* cases, the Court concludes that the RRSA is not unconscionable. The RRSP advises employees that they may consult with a lawyer and that they can review the program before agreeing to its terms. (Booklet at 13.) The RRSP is written in plain language that a reasonable lay person could understand and explicitly states what an employee can expect from arbitra-

tion. No where does the RRSP or the RRSA contain fine print. A reasonable employee would expect that the paperwork he signed at the beginning of his employment would contain some company policy regarding the resolution of employment disputes, including submitting those disputes to arbitration. Even though the parties had unequal bargaining power, the terms of the RRSP are not unusually harsh; rather, LJS agrees to share arbitration expenses, agrees not to hire an attorney if the employee does not hire an attorney, and states that any modifications to the arbitration provisions of the RRSP must be mutual and in writing. Moreover, as the *Swain* case indicates, it is immaterial whether Mr. Johnson actually read the RRSP or whether the terms were negotiable. Finally, as the *Voorhees* case instructs, LJS was not under any duty to explain the RRSP. In sum, there was no unconscionability in the bargaining process.

*iii. Contracts in Employee Handbooks*

 Plaintiff argues that, even if there was an agreement to arbitrate, the agreement is invalid because it was part of a 'bundled' presentation contained in an employee handbook. Under Missouri law, the general rule is that an employee handbook does not create a contract between an employee and employer. *See Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832, 834 (8th Cir.1997). However, in several recent cases, Missouri courts have enforced agreements to arbitrate found· in employee handbooks when the employee signed a separate page that contained the arbitration provision. *See McIntosh v. Tenet Health Sys. Hospitals, Inc.,* 48 S.W.3d 85, 89 (Mo.App.2001); *Patterson,* 113 F.3d at 835 (agreement to arbitrate enforceable when the arbitration clause was set forth on a separate page and introduced by a heading reading 'Important Acknowledgment Form' and contained

contractual language such as 'I agree'). In the instant case, the RRSA was on a separate page from the RRSP. The RRSA was set apart by a separate title, encapsulated the contents of the RRSP, and contained contractual language. Therefore, the fact that the agreement was a tear out sheet in a booklet does not invalidate it.

Having concluded that Mr. Johnson did enter into an agreement to arbitrate with LJS and that no contractual bases exist for invalidating that agreement, the Court will now consider whether the agreement should be invalidated on any other grounds.

**B. The *Gilmer* Exception**

 Even though a statutory claim may be subject to arbitration generally, "the prospective litigant [must be able to] effectively ... vindicate his or her statutory cause of action in the [specific] arbitral forum." *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (internal quotations and citations omitted); *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 313–14 (6th Cir.2000). Once the existence of a written agreement to arbitrate has been established, the party opposing arbitration bears the burden of proving that the arbitration agreement should not be enforced. *State ex rel. PaineWebber, Inc. v. Voorhees,* 891 S.W.2d 126, 128 (Mo.1995) (en banc). Plaintiff argues that the agreement to arbitrate should be invalidated because the following provisions do not allow for effective vindication of statutory rights: prohibition of class arbitrations, discovery, fee-shifting, and statute of limitations.

The Court must first determine whether it is the appropriate forum to resolve these arguments. Recent Supreme Court authority suggests that any provision that is open to the interpretation or discretion of the arbitrator cannot be reached by the

court. The Court stated, "it would be improper for a court to refuse to enforce an agreement to arbitrate based upon mere speculation about what an arbitrator might do." *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 123 S.Ct. 1531, 1535, 155 L.Ed.2d 578 (2003) (refusing to decide whether potential limitations on damages invalidated an agreement to arbitrate). The Court went on to explain:

> [W]e should not, on the basis of mere speculation that an arbitrator might interpret these ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved. In short, since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract ... the proper course is to compel arbitration.

*Id.* at 1535.

While there is Sixth Circuit and other circuit authority deciding these issues, the cases are distinguishable because they either pre-date *PacifiCare* or the clauses at issue were less ambiguous or allowed less arbitrator discretion than the clauses in the instant case. *See, e.g., McMullen v. Meijer*, 355 F.3d 485, 493–94 (6th Cir.2004) (invalidating agreement to arbitrate when employer had exclusive control over the pool of potential arbitrators); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir.2003) (considering whether an agreement to arbitrate was valid when employee had to pay costs of arbitration); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir.2000) (discussing neutrality of the forum, discovery, cost-splitting, and arbitrator selection, but not reaching those issues based on finding that there was no agreement to arbitrate); *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F.Supp.2d 916, 921–929 (M.D.Tenn.2003) (J. Trauger) (invalidating agreement to arbitrate when employer had exclusive control over pool of potential arbitrators). With these restrictions in mind, the Court will now consider each allegedly invalid provision.

### i. Collective Arbitration

■ A recent Supreme Court case specifically states that the arbitrator, not the court, should determine whether class arbitration is permitted by an ambiguous contract. *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003); *see Pedcor Management Co., Inc v. Nations Personnel of Texas, Inc.*, 343 F.3d 355 (5th Cir.2003) ("[W]e do not now address the parties' other arguments on appeal, most of which depend[ ] on the now-flawed premise that a district court maintains the initial authority to order class arbitration."). Therefore, this Court cannot determine whether a prohibition on class arbitration would effectively vindicate rights because this Court does not have the authority to decide whether the contract permits class arbitrations.[7]

---

7. The Court is sensitive to the fact that foreclosing the possibility of a class action would force an individual plaintiff to bear the entire cost of proving a FLSA because the benefit to any individual plaintiff is small. A recent Sixth Circuit case summarizes the problem:

> [E]mployers should not be permitted to draft arbitration agreements that deter a substantial number of potential litigants from seeking any forum for the vindication of their rights. To allow this would fatally undermine the federal ... statutes, as it would enable employers to evade the requirements of federal law altogether ... if the fees and costs of the arbitral forum deter potential litigants, then that forum is clearly not an effective, or even adequate, substitute for the judicial forum ... where

### ii. Discovery and Fee–Shifting

 While there is no specific authority on whether a court can decide if discovery or fee-shifting clauses are invalid, the general provisions from *PacifiCare* govern. In the agreement to arbitrate at issue, the discovery and fee-shifting clauses provide for arbitrator discretion. For example, the discovery clause provides for one deposition, unless the arbitrator orders more depositions upon a showing of substantial need. (Booklet at 10.) Because the number of depositions will be determined by the arbitrator, just as the limitation on damages would have been decided by the arbitrator in *PacifiCare,* this Court cannot reach the issue based upon speculation about what the arbitrator might do.

The same is true of the fee-shifting clauses. The clauses provide that in a case arising under a statute where the prevailing party can be awarded attorney's fees, the arbitrator can award attorney's fees to the prevailing party. (Booklet at 10.) The FLSA allows a prevailing employee to collect attorney's fees, but not a prevailing employer to do the same. Plaintiff argues that the agreement to arbitrate therefore alters the allowable attorney's fees awards under FLSA. However, the clause at issue does not specifically address the attorney's fee-shifting in the FLSA. The RRSP also provides that any party filing a suit in a judicial forum will be liable for attorneys' fees resulting from a Motion to Compel.[8] Because it is unclear how the arbitrator

will apply these clauses, this Court cannot yet reach the issue.

### iii. Statute of Limitations

 The only argument which this Court could properly address under *PacifiCare* is the statute of limitations issue. Under the RRSP, an employee must pursue three steps of the Dispute Resolution Program before requesting arbitration. However, the relevant statute of limitations runs while the employee is pursuing the three steps and a claim is not deemed filed until the employee requests arbitration. Plaintiff reasons that, even if an employee begins the first step of the dispute resolution process within the applicable time period, the statute of limitations may still run out on the claim. As explained *supra,* the parties entered into a joint Stipulation for Stay and Tolling Agreement on December 21, 2001, which tolled the statute of limitations as to Plaintiff. Therefore, Plaintiff's argument on this point is moot because Plaintiff is not in danger of losing his ability to bring a claim.

In sum, the Court concludes that it cannot properly consider whether the class arbitration, discovery, and fee-shifting provisions would effectively vindicate Mr. Johnson's rights under *Gilmer.* To the extent that the Court can entertain the argument that the statute of limitations provisions of the RRSP do not allow for

---

that prospect deters potential litigants, the arbitration agreement ... is unenforceable. *See Morrison v. Circuit City Stores,* 317 F.3d 646, 658 (6th Cir.2003) (addressing cost sharing provisions in arbitration agreement and determining they should be addressed on a case by case basis); *see also Shankle v. B–G Maintenance Management of Colorado, Inc.,* 163 F.3d 1230, 1235 (10th Cir.1999) ("The Agreement thus placed [the plaintiff] between the proverbial rock and a hard place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's

services, and the prohibitive cost substantially limited use of the arbitral forum.").

8. LJS represented to the Court that it had not sought attorneys' fees from any employees filing cases in the judicial, rather than the arbitral, forum. However, "[R]eviewing courts should not consider after-the-fact offers by employers to pay the plaintiff's share of the arbitration costs where the agreement itself provides that the plaintiff is liable, at least potentially, for arbitration fees and costs." CITE.

effective vindication of rights, the Court concludes that the issue is moot. The Court will now consider any remaining grounds upon which the agreement to arbitrate may be invalidated.

### D. Waiver of Right to Jury Trial

Finally, Plaintiff argues that his agreement to arbitrate should not be enforced because he did not knowingly and voluntarily waive his right to a jury trial. There is some case law in the Sixth Circuit applying the knowing and voluntary waiver standard to agreements to arbitrate. *See Morrison,* 317 F.3d at 646 (finding a knowing and voluntary waiver in a discrimination case when plaintiff was educated managerial employee, the waiver of right to sue in federal court was plain, and plaintiff did not allege that the agreement was unclear); *Walker,* 289 F.Supp.2d at 933–34, 936 (observing that the advice to confer with an attorney was not meaningful, that use of the word 'litigation,' as opposed to 'trial' or 'jury', was not recognizable, and finding that there was no knowing and voluntary waiver).

 The Court concludes that Mr. Johnson's agreement to be bound by the RRSP constituted a knowing and voluntary waiver of his right to a jury trial. While the RRSP Booklet could be more explicit, it clearly makes comparisons between the role of a jury and the arbitrator, implying that there will be no jury at arbitration. The RRSP explains the agreement to arbitrate and the arbitration procedure in clear, plain language. The Booklet never specifically states that the employee will be relinquishing his right to a jury. However, the Booklet does offer comparisons between judicial and arbitral fora. (Booklet at 6.) The Booklet says that the arbitration procedure offers the same rights as a court of law and that an arbitrator, just like a jury, can make an award. (*Id.*) The Booklet also states that juries do not specialize in employment disputes, but arbitrators do. (*Id.*) In a statement that may be confusing to a layperson, the Booklet says, "This program does not prevent you from filing a charge or claim with any local, state or federal agency such as the Equal Employment Opportunity Commission, or prevent you from filing for unemployment insurance benefits." (Booklet at 11.) However, the Agreement states that the employee has an opportunity to discuss it with an attorney. (Booklet at 13.) The Court finds that Mr. Johnson is charged with sufficient information to make a knowing and voluntary waiver of his right to a jury trial under the FLSA.

In conclusion, the Court finds that Mr. Johnson did enter into an agreement to arbitrate. After considering the parties' arguments and reviewing the briefs and relevant case law, the Court does not find any basis, contractual or otherwise, upon which the agreement should be invalidated. Therefore, the Motion to Compel Arbitration is GRANTED, the Motion to Stay this Litigation is DENIED, and the Motion to Rescind Defendant's Arbitration Agreements is DENIED.

### III. Plaintiff's Motion for a Case Status Conference

Plaintiff moves for a case status conference on the basis that, in the case proceeding before the AAA, Defendant has raised the statute of limitations as a partial or complete bar to claims asserted by the plaintiff class. As the Court observed at the previous Status Conference, however, this Court does not have the authority to affect any proceedings before the American Arbitration Association. This issue would most appropriately be taken up before the AAA. Moreover, because the Motion to Compel Arbitration is granted, the Motion for Status Conference will be moot and is DENIED.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motions to Rescind Defendant's Arbitration Agreements and for a Case Status Conference are DENIED. Defendant's Motions to Stay this Litigation is DENIED and its Motion to Compel Arbitration is GRANTED. Therefore, arbitration is COMPELLED and the Clerk of the Court is directed to terminate this case file.

An appropriate Order will enter.

### *ORDER*

Pending before the Court are the following four motions: Defendant Long John Silver's Inc.'s ("Defendant" or "LJS") Motion to Compel Arbitration (Doc. No. 27–1), Defendant's Motion for Stay of this Litigation (Doc. No. 27–2), Plaintiff Kevin Johnson's ("Plaintiff" or "Mr. Johnson") Motion to Rescind Defendant's Arbitration Agreements (Doc. No. 68–1), and Plaintiff's Motion for a Case Status Conference (Doc. No. 135).

For the reasons set forth in the accompanying Memorandum, Plaintiff's Motions to Rescind Defendant's Arbitration Agreements and for a Case Status Conference are DENIED. Defendant's Motions to Stay this Litigation is DENIED and its Motion to Compel Arbitration is GRANTED. Therefore, arbitration is COMPELLED and the Clerk of the Court is directed to terminate this case file.

It is so ORDERED.