Stephen **HENDLER**, Respondent,

v.

**MANAGEABLE INFORMATION SYSTEMS, INC.**, Appellant.

No. 60180.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 15, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 26, 1992.

Hugh R. Law, David J. Newburger, St. Louis, for appellant.

Joan M. Tanner, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

Manageable Information Systems (MIS) appeals from the verdict and judgment in favor of plaintiff Stephen Hendler for damages resulting from MIS' breach of a one-year employment contract. We affirm in part and reverse and remand in part.

In the spring of 1985, Hendler was unemployed. He spoke with Joseph Mathews, a "headhunter" for Management Recruiters, Inc., who in turn suggested to MIS executives that Hendler would be suited for a vacant sales position with the company. Mathews then arranged an interview for Hendler in St. Louis with William Stillman, MIS' marketing development director. In May, MIS hired Hendler.

---

Hendler testified to the terms of his employment as communicated by MIS through Stillman to Mathews who then told Hendler. He was to receive a one-year contract with a $45,000 salary, a $15,000 nonrecoverable draw against his commissions, a $25,000 guaranteed year-end bonus, an automobile allowance, health benefits, legal and accounting expenses and moving expenses.

On May 22, 1985, Hendler began working for MIS as a salesman of computerized telephone equipment for hotels. Hendler devoted almost his entire time as an MIS employee to selling a particular phone system, the NEAX 2400, to the New York Penta Hotel. Despite his efforts, Hendler failed to make a single sale for MIS. In January 1986, MIS withdrew from marketing telephone equipment to hotels. On January 9, 1986, MIS fired Hendler. With MIS, Hendler received $28,125 in salary and a $9,375 draw against commissions. After his termination, Hendler received $1,182.60 in prorated salary and $1,730.76 in severance pay from MIS.

In late February 1986, Ameritech Communications, Inc., hired Hendler to sell telephone systems. From February 28 to May 22, 1986, Hendler received $9,205 in salary from Ameritech. Furthermore, in March he sold an NEAX 2400 phone system to the Penta Hotel and received a $46,000 commission.

Thereafter, Hendler filed suit against MIS for breach of contract. In his claim for damages, totaling $87,450, Hendler sought $35,000 in unpaid salary, $35,000 in unpaid commissions, $6,000 in moving expenses, $750 in uncovered medical costs, $2,800 in unpaid automobile allowance, and $7,905 in unreimbursed travel and entertainment expenses.

As an affirmative defense, MIS asserted that Hendler mitigated his damages by earning over $46,000 from Ameritech during the one-year term of his contract with MIS. Furthermore, MIS counterclaimed for damages on two promissory notes for loans it made to Hendler and on unauthorized charges Hendler made to a MIS credit card account.

MIS moved for partial summary judgment on its counterclaim for the promissory notes and Hendler's claim for $35,000 in unpaid commissions. The trial court overruled the motion on the notes but sustained it on Hendler's commission claim, thereby reducing his damages from $87,450 to $52,450. Thereafter, the trial court denied MIS' supplemental motion for partial summary judgment in which MIS argued Hendler had completely mitigated his damages.

At the close of the evidence, MIS moved for a directed verdict which the trial court denied except for MIS' counterclaim on one of the promissory notes. The jury returned verdicts in favor of Hendler for his damages claim in the amount of $65,105, in favor of MIS on its counterclaim for the remaining promissory note and in favor of Hendler on MIS' counterclaim for unauthorized credit card charges. The court denied both parties' motions for a new trial and MIS' motion for judgment notwithstanding the verdict and entered judgment in accord with the verdicts. MIS appeals from the trial court's judgment on Hendler's claim for damages and on MIS' counterclaim for unauthorized credit card charges. Hendler also filed a cross-appeal from the judgment against him upon the two promissory notes. However, he failed to perfect this cross-appeal and it has previously been dismissed.

## I. Mitigation of Damages

In its first point on appeal, MIS contends Hendler failed to make a submissible case for recovery of damages because his earnings from Ameritech completely mitigated his claim for unpaid guaranteed compensation. Therefore, MIS argues, the trial court erred in overruling its motions for directed verdict and judgment notwithstanding the verdict.

■ Viewing the evidence in the light most supportive of the verdict, *Minden v. Otis Elevator Co.*, 793 S.W.2d 461, 462 (Mo.App.1990), and overlooking MIS's evidence to the contrary, Hendler had a one-year oral employment contract with MIS, which guaranteed him $85,000 in compensation plus fringe benefits. In his petition,

Hendler measured his damages as the remainder due under the contract. However, the appropriate measure of damages for the breach of an employment contract is the contract price for services to be rendered minus the income the employee earned, or with diligence could have earned, during the contract term. *Phipps v. School District of Kansas City*, 645 S.W.2d 91, 105 (Mo.App.1982).

 Following this formula, the tables below set forth Hendler's contract for services to be rendered to MIS and his income during the contract term:

A. CONTRACT FOR SERVICES [1]

| | |
|---|---|
| Salary Claim | $ 85,000.00 |
| Unpaid Car Allowance | $ 2,800.00 |
| Unpaid Medical Benefit | $ 750.00 |
| Travel and Entertainment Expense | $ 7,905.18 |
| Moving Expense | $ 6,000.00 |
| TOTAL COMPENSATION CLAIM | $102,455.18 |

B. EARNINGS DURING CONTRACT TERM

| | |
|---|---|
| MIS Salary/Draw Payments | $ 40,413.36 |
| Ameritech Salary Payments | $ 9,205.00 |
| Ameritech Commission Payment | $ 46,000.00 |
| TOTAL INCOME | $ 95,618.36 |

Therefore, Hendler's income from Ameritech, offset against his claim for unpaid earnings and benefits from MIS, leaves a balance of $6,836.82. If Hendler were permitted to retain the full amount of the verdict in his favor, $65,105, plus all sums paid during the contract year by MIS and Ameritech, $95,618.36, his income for the contract term would total $160,723.36. This would constitute a windfall of $58,268.18 in excess of the sum he was entitled to receive under the contract.

In support of the verdict, Hendler contends that $85,000 was merely the *minimum* amount he was guaranteed under the

contract. As Richard Goldstein, president of MIS, acknowledged in his testimony, there was no upper limit to Hendler's earning potential because he was entitled to a commission on his sales. Therefore, Hendler argues, the jury simply found Hendler would have earned more than $85,000 if he remained with MIS until May 22, 1986.

This argument, however, is purely conjectural. The general rule is that a "a person employed to solicit sales orders on a commission basis is entitled to his commission when the order is accepted by his employer." *Slusher v. Mid–America Broadcasting*, 811 S.W.2d 443, 446 (Mo. App.1991). Therefore, Hendler was only *guaranteed* an $85,000 income plus fringe benefits; his right to commissions was conditioned upon whether he sold any MIS products. Hendler never obtained a single order for an MIS product. Thus, he was never entitled to a commission.

## II. Credit Card Claims

MIS contends the trial court erred in overruling its motions for a new trial and judgment notwithstanding the verdict because the portion of the jury's verdict for Hendler attributable to his $7,900 claim for unreimbursed travel and entertainment expenses and the jury's verdict for Hendler on MIS' counterclaim for unauthorized credit card charges were unsupported by the evidence.

MIS first claims Hendler failed to make a submissible claim for unreimbursed traveling and entertainment expenses. Hendler testified that in late 1985 it became necessary for him to charge $7,905.18 in business expenses to his personal American Express charge account after his MIS-issued credit card was frozen due to MIS' inability to pay the bill. He also testified that in accord with company policy he submitted these expenses to MIS for reim-

1. These figures are based upon Hendler's second amended petition and testimony. They do not include his $35,000 claim for lost commissions because the trial court reduced his claim by this amount on a motion for summary judgment. Hendler has not appealed from this judgment.

bursement a few days after they were incurred.

MIS, on the other hand, contends Hendler failed to properly file the reports and documentation MIS required before it would reimburse an employee for such expenses. Furthermore, MIS argues, when confronted with the American Express charge tickets he produced in discovery Hendler admitted: (1) some expenses might have been personal; (2) he could not identify the person he entertained or business purpose of many of the charges; (3) he could not read the handwriting on many of the tickets; and (4) he could not testify that he had turned in any of the tickets to MIS.

The determination of whether the verdict is against the weight of the evidence is within the exclusive province of the trial court. *McPherson v. David,* 805 S.W.2d 260, 263 (Mo.App.1991). Furthermore, on appeal we do not weigh the evidence but rather determine whether sufficient evidence exists to support the verdict. *Id.* To carry out this process, we consider the evidence in the light most favorable to the party who prevailed at trial, giving that party all favorable inferences and disregarding the opposing party's evidence unless it supports the verdict. *Id.*

The most favorable evidence to Hendler shows that he incurred $7,905.18 in business expenses in late 1985 and early 1986 while MIS employed him. From the 81 receipts showing these expenses which Hendler produced during discovery, only one receipt for $15.90 was identified as personal. This should be deducted leaving a balance of $7,889.28. Eight receipts were deemed illegible by Hendler but only to the extent that he could not recall the person entertained or business purpose of the expense. Therefore, this evidence combined with Hendler's testimony that he submitted the receipts to MIS for reimbursement amounts to a submissible claim. Appellant's point is denied.

MIS also claims the verdict for Hendler on MIS' counterclaim for unauthorized charges it alleges Hendler made to his company-issued VISA credit card account is against the weight of the evidence. Viewing the evidence, again, in the light most favorable to Hendler and the verdict, we find there was sufficient evidence to support this verdict. A portion of MIS' credit card agreement provided that Hendler had to pay his balance on the account before receiving his final paycheck. Hendler received his final paycheck and severance pay from MIS in January 1986. Thus, there was sufficient evidence to support the jury's finding that Hendler had no outstanding personal charges on the MIS Visa Card when his employment was terminated. Appellant's point is denied.

The judgment of the trial court in favor of MIS and against Hendler on the two promissory notes is affirmed. The judgment in favor of Hendler and against MIS on the latter's claim for credit card charges is affirmed. The judgment of $65,105 in favor of Hendler and against MIS for breach of contract is reversed and the cause is remanded with directions to enter a new judgment on this claim in favor of Hendler and against MIS in the sum of $6,820.92 ($6,836.82 minus $15.90). Cost assessed against respondent.

GRIMM, P.J., and CRANDALL, J., concur.