

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | | |
|---|---|---|---|
| **LUKE W. AMOROSO, Ph.D.,** | ) | | |
| | ) | | |
| *Appellant,* | ) | **WD86136** | |
| **v.** | ) | | |
| | ) | **OPINION FILED:** | |
| | ) | **January 16, 2024** | |
| **TRUMAN STATE UNIVERSITY,** | ) | | |
| | ) | | |
| *Respondent.* | ) | | |

**Appeal from the Circuit Court of Adair County, Missouri
The Honorable Matthew J. Wilson, Judge**

**Before Division Three:** Lisa White Hardwick, Presiding Judge, and
Karen King Mitchell and Cynthia L. Martin, Judges

Luke Amoroso appeals from summary judgment in favor of Truman State University[1] in Amoroso's breach of contract action. Amoroso raises five points on appeal. For his first four points, he argues the motion court erred in granting summary judgment because the University was not entitled to judgment as a matter of law on the issue of actual damages (Points I and III) and consequential damages (Points II and IV).

---

[1] The correct name of the entity with legal capacity to sue and be sued is the Board of Governors of Truman State University.

Lastly, he argues the court erred in granting summary judgment before there was an opportunity for meaningful discovery (Point V). Finding no error, we affirm.

## Background[2]

Beginning in August 2015, Amoroso was employed by the University as a non-tenured Assistant Professor of Linguistics pursuant to a series of one-year appointments. On July 1, 2020, the University notified Amoroso that his employment with the University would end May 14, 2021. The University paid Amoroso's salary in full for each one-year appointment period through the 2020-21 period.[3]

On June 10, 2021, Amoroso filed a two-count petition against the University asserting breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count II). One of the general allegations in Amoroso's petition states,

> As a direct result of [the University]'s acts, Dr. Amoroso has sustained damages, including but not limited to: a) denial of rights guaranteed him by the Contract and Policies; b) loss of [the potential of] tenure[-]track employment; c) loss of his investment of time and resources in tenure-track progress; d) loss of reputation; e) damage to his teaching career; [f]) humiliation and mental anguish; and [g]) attorneys' fees and expenses.

For both counts, Amoroso "prays for judgment . . . against [the University], money damages for [the University's] breach of contract, and for such other relief as the Court

---

[2] "In determining whether the entry of summary judgment was appropriate, we 'review[ ] the record in the light most favorable to the party against whom judgment was entered, and give[ ] the non-movant the benefit of all reasonable inferences from the record.'" *Malin v. Missouri Ass'n of Cmty. Task Forces*, 669 S.W.3d 315, 320 (Mo. App. W.D. 2023) (quoting *Show-Me Inst. v. Off. of Admin.*, 645 S.W.3d 602, 607 (Mo. App. W.D. 2022)).

[3] To avoid repetition, we set out the facts relevant to summary judgment in the Analysis section of the opinion.

deems just and proper." The University filed an answer and, for an affirmative defense, alleged that Amoroso "failed to plead that the University failed to pay [him] salary or benefits to which he claims he was entitled pursuant to any one[-]year term appointment."

On January 26, 2022, the University moved for summary judgment on both counts of Amoroso's petition on the basis of failure to state a claim. The University argued that, as a matter of law, Amoroso could not establish damages, which are an essential element of both counts. The University also moved for a protective order to stay discovery pending resolution of its summary judgment motion and to quash two notices of deposition filed by Amoroso. In response, Amoroso moved to extend the deadline for responding to the University's summary judgment motion and to conduct "some limited discovery" before having to file his response.[4] Before the court ruled on the competing discovery motions, Amoroso responded to the University's motion for summary judgment and included an additional statement of uncontroverted material facts. The University filed a reply, which included responses to Amoroso's additional facts.

The court then granted Amoroso another extension to conduct discovery, including depositions, limited to the issues raised in the University's summary judgment motion. Amoroso deposed the University's Executive Vice President for Academic Affairs and Provost (Provost), who served during the relevant time and signed the letter

---

[4] During this same time frame, Amoroso also filed a separate, unopposed motion requesting a brief extension of the deadline to respond to the University's summary judgment motion. That motion for extension was granted.

notifying Amoroso that his employment with the University would not extend beyond the end of the 2020-21 appointment period. Roughly six weeks later, Amoroso filed a supplemental response and additional statement of uncontroverted material facts. The University then filed a supplemental reply, including responses to Amoroso's supplemental facts.

On December 20, 2022, the court held a hearing on the University's motion for summary judgment. And, on March 7, 2023, the court entered a judgment granting the University's motion. The judgment does not state the reason for the court's decision. This appeal follows.

**Standard of Review and Summary Judgment Standard**

"We review the grant of summary judgment *de novo*." *Malin v. Missouri Ass'n of Cmty. Task Forces*, 669 S.W.3d 315, 320 (Mo. App. W.D. 2023). "When the trial court's order does not state the reasons for its grant of summary judgment, we presume that the trial court based its decision on the grounds raised in the movant's motion for summary judgment." *Seymour v. Switzer Tenant LLC*, 667 S.W.3d 619, 625 (Mo. App. W.D. 2023). But, "[t]he trial court's grant of summary judgment may be affirmed on any theory supported by the record." *Id.* at 625-26; *Malin*, 669 S.W.3d at 321 ("We will affirm the trial court's granting of summary judgment if it is correct as a matter of law on any grounds.") (quoting *Show-Me Inst. v. Off. of Admin.*, 645 S.W.3d 602, 607 (Mo. App. W.D. 2022)).

"Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" *Malin*, 669 S.W.3d at 310 (quoting Rule 74.04(c)(6)).

> A defending party is entitled to summary judgment if it demonstrates one of the following: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense.

*Id.* To make this showing, the movant must attach to the motion for summary judgment a statement of uncontroverted material facts that "state[s] with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts." Rule 74.04(c)(1).[5]

"Once the movant has established [a prima facie] showing, the burden shifts to the non-movant, who must demonstrate 'that one or more of the material facts relied upon by the [moving] party is genuinely disputed.'" *Vescovo v. Kingsland*, 628 S.W.3d 645, 653 (Mo. App. W.D. 2020) (quoting *Impey v. Clithero*, 553 S.W.3d 344, 349 (Mo. App. W.D. 2018)). "The non-movant's response must either admit or deny [each of the movant's factual statements], with specific references to discovery, exhibits, or affidavits demonstrating specific facts showing there is a genuine issue [for trial]." *Bracely-Mosley v. Hunter Eng'g Co.*, 662 S.W.3d 806, 810 (Mo. App. E.D. 2023) (citing Rule 74.04(c)(2)). "If the non-movant does not properly deny a statement of fact, that fact is

---

[5] All rule references are to the Rules of the Supreme Court of Missouri (2021).

deemed admitted." *Id.* (citing Rule 74.04(c)(2)). "If the non-movant files a statement of additional material facts, the process repeats itself, but with the non-movant stating material facts, supported in the same manner, to which the movant must respond." *Id.* (citing Rule 74.04(c)(2)-(3)).

"Our review of summary judgment is limited to the undisputed material facts established in the process set forth in Rule 74.04(c); we do not review the entire trial court record." *Id.* "We look exclusively to the step-by-step procedure mandated by Rule 74.04 to determine whether there is a genuine issue of material fact." *Id.* Even if uncontroverted, conclusory statements and legal conclusions "are not 'facts' for purposes of Rule 74.04." *Metro. Nat'l Bank v. Commonwealth Land Title Ins. Co.*, 456 S.W.3d 61, 68 (Mo. App. S.D. 2015).

**Analysis**

On appeal, Amoroso argues the motion court erred in granting summary judgment because the University was not entitled to judgment as a matter of law on the issues of actual damages and consequential damages for breach of contract (Points I and III, respectively) and actual damages and consequential damages for breach of the implied covenant of good faith and fair dealing (Points II and IV, respectively). He also argues the motion court erred in granting summary judgment before there was an opportunity for meaningful discovery (Point V).

"A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages

6

suffered by the plaintiff." *Keveney v. Missouri Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010). "To establish a breach of the covenant of good faith and fair dealing, the plaintiff has the burden to establish that the defendant exercised a [right] conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the plaintiff] the expected benefit of the contract." *Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 190 (Mo. App. W.D. 2017) (quoting *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 9 (Mo. App. W.D. 2013)).

The University's motion for summary judgment focuses exclusively on the element of damages. For purposes of its motion only, the University does not contest the existence of the other elements of a claim for breach of contract or a claim for breach of the covenant of good faith and fair dealing.

A claim for breach of the implied covenant of good faith and fair dealing is a contract action. *Id.* at 188 ("[T]he beginning point for any analysis of a claim for breach of the covenant of good faith and fair dealing is to recognize that it is a contract action, and the damages associated with a breach of contract arise from the terms of the contract."). Thus, the measure of damages in a claim for breach of the implied covenant of good faith and fair dealing is the contract measure of damages. *See id.* The University argues that Amoroso was paid the full amount of salary provided by the contract for each one-year appointment period and, thus, he cannot prove damages. Because the University's motion focuses solely on damages, and the measure of damages for both of Amoroso's claims is the same, we address Point I and III (actual damages) together and Points II and IV (consequential damages) together for ease of discussion.

7

**I.** **The motion court did not err in granting summary judgment in the University's favor on Amoroso's claims for actual damages (Points I and III).**

For his first point, Amoroso asserts the motion court erred in granting summary judgment to the University on his breach of contract claim because he is entitled to actual damages in the form of pay under his employment contract until he receives the due process required by the contract. For his third point, Amoroso alleges the same error with respect to his claim for breach of the covenant of good faith and fair dealing. In support of these points, Amoroso asserts that his contract incorporated by reference the University's Code of Policies, and that those policies guaranteed him specific due process before the University could take certain adverse employment actions against him.

The University's factual statements in support of summary judgment and Amoroso's responses thereto establish the following uncontroverted material facts. By Notice of Appointment dated June 15, 2019 (the Appointment), which is the contract Amoroso alleges the University breached, he was appointed to the position of Assistant Professor of Linguistics for the period from August 14, 2019, through May 15, 2020, at a salary of $52,015 (the 2019-20 academic year). The University paid, and Amoroso accepted, his full salary for the 2019-20 academic year.[6] During the pendency of the Appointment, the University became aware of alleged misconduct by Amoroso, which occurred during a study abroad trip in December 2019 that Amoroso and University students attended. Amoroso was suspended, with pay, in February 2020, and in April of

---

[6] Amoroso actually received $52,214.96 for the 2019-20 academic year because of a pay increase in January 2020.

that year, he was informed by the Provost that his contract would not be renewed. However, University policy provided that an additional one-year terminal appointment would be offered as part of the severance process.

By letter dated July 1, 2020, the University appointed Amoroso to the Assistant Professor position from August 12, 2020, to May 14, 2021, at a salary of $52,415 (the 2020-21 academic year). The University paid, and Amoroso accepted, his full salary for the 2020-21 academic year. The July 1, 2020 letter also stated, in part, that it was a "Terminal Appointment," that "[n]o further employment will be offered to [Amoroso] beyond the stated termination date," and that "[a]fter May 14, 2021, [his] employment relationship with the University will end, permanently." Accordingly, Amoroso did not provide any services to the University after May 14, 2021.[7] Amoroso remained on suspension throughout the 2020-21 academic year. His claims are not based on the 2020-21 terminal appointment.

Amoroso filed two statements of additional uncontroverted facts, which are the same in all relevant respects. Several of Amoroso's facts pertain to his claim that the Appointment incorporated the University's 2014 internal rules and Code of Policies. Other uncontroverted facts asserted by Amoroso pertain to his alleged right under that Code of Policies to a hearing prior to termination but do not address his claim on appeal

---

[7] In his response to the University's statement of uncontroverted material facts, Amoroso admitted most of the University's facts, but, to the extent he attempted to deny any of those facts, he failed to support his denials with "specific reference(s) to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). Thus, Amoroso admitted all of the University's facts. *Id.*

9

that he was entitled to receive his salary until a hearing is held. And other Amoroso facts relate to his communications with University administrators, which do not speak to his compensation under the Appointment.

The University argued and the motion court found that Amoroso was unable to demonstrate the element of damages because he was paid in full the salary provided for in the contract. The uncontroverted material facts demonstrate that the University paid, and Amoroso accepted, his full contractual salary for the 2019-20 academic year. In addition, the University paid, and Amoroso accepted, his full salary for the 2020-21 academic year, his terminal year. Amoroso acknowledges that he received his full salary for those years. Therefore, to the extent that Amoroso is seeking actual damages in the form of unpaid salary for the 2019-20 and 2020-21 academic years, there are no material facts in genuine dispute, and the University is entitled to judgment as a matter of law on Amoroso's claim for actual damages. *See Keveney*, 304 S.W.3d at 102-03 ("An employee discharged in violation of an employment contract can recover the amount of income he or she would have earned absent the breach, less any income earned in the interim."); *Gwartz v. Jefferson Mem'l Hosp. Ass'n*, No. 4:92CV00068 GFG, 1994 WL 741012, at *1 (E.D. Mo., Nov. 17, 1994) (granting partial summary judgment on contract damages claims holding that "plaintiff's damages in this [breach of employment contract] case are limited to the amount of salary and fringe benefits to which plaintiff would have been entitled under the contract had it not been terminated"); *Hendler v. Manageable Info. Sys., Inc.*, 838 S.W.2d 486, 488 (Mo. App. E.D. 1992) ("[T]he appropriate measure of damages for the breach of an employment contract is the contract price for services to

be rendered minus the income the employee earned, or with diligence could have earned, during the contract term."); *Phipps v. Sch. Dist. of Kansas City*, 645 S.W.2d 91, 105 (Mo. App. 1982) (same).

On appeal, Amoroso argues, as he did for the first time during the hearing on the University's motion for summary judgment, that the University was not entitled to summary judgment based on a lack of damages because he is entitled to actual damages in the form of "ongoing pay" until the University affords him a "hearing and other due process." Amoroso claims that University Code of Policies, adopted in 2020, was incorporated into the contract by reference and guaranteed him due process before an adverse employment action can be taken against him. Therefore, he argues that because the University did not comply with its 2020 Code of Policies, his employment continued beyond the contract period and the University must continue to pay him. However, we can address this issue only if the University's 2020 Code of Policies is part of the summary judgment record, which it is not.

All references to the University Code of Policies in the summary judgment record are to the 2014 version of the Code. In pertinent part, the 2014 version of the Code of Policies provides,

> Dismissal for cause of a teacher previous to the expiration of a term appointment, should, if possible, be considered by both a faculty committee and the governing board of the institution. In all cases where the facts are in dispute, the accused teacher should . . . have the opportunity to be heard in his . . . own defense by all bodies that pass judgment on his . . . case. He . . . should be permitted to have with him . . . an adviser of his . . . own choosing who may act as counsel.

The 2014 Code of Policies also provides, "[h]olders of academic faculty positions under term appointments . . . shall not be terminated during the term thereof except for cause . . . ." And, further, "[h]olders of academic faculty positions . . . serving under a specified term appointment shall not have their appointments terminated, during the respective period of time, except for incompetence, neglect or refusal to perform duties, dishonesty, drunkenness, or immoral conduct."

In August 2020, the University amended its Code of Policies, and the provision on which Amoroso relies for his ongoing pay argument was added to the Code as part of those amendments. Amoroso contends that the 2020 Code of Policies entitles him to a review by the faculty committee, including a hearing, and an appeal to the Board of Governors. According to Amoroso, the 2020 Code of Policies states, "where the . . . Provost believes that a faculty member's continued performance of faculty duties poses a significant risk of harm to persons or property, the faculty member may be relieved of duties and suspended with pay during the pendency of the hearing and appeals process." And Amoroso says the 2020 Policy gives him the right to pay "during the pendency of the disciplinary hearing and appeals process."

Amoroso's petition did not include allegations supporting this ongoing pay argument. And, in his written responses to the University's motion for summary judgment, he relied exclusively on the 2014 version of the Code of Policies, which did not include what he argues is the pay-during-pendency-of-appeal provision. Thus, the summary judgment record does not mention or include the 2020 version of the Code of Policies. Amoroso first mentioned the 2020 version during the hearing on the

12

University's summary judgment motion.[8]  At the court's request, Amoroso provided a copy of the 2020 version to the court after the hearing, but doing so did not alter the summary judgment record as reflected in the step-by-step procedure mandated by Rule 74.04.

> The following colloquy occurred at the hearing:
>
> [Court]:  You know, [Amoroso's counsel], the language that you talked about regarding the payment until your—during your term of suspension until the hearing is held, are—is that language contained in any of your exhibits?
>
> [Amoroso's counsel]:  Your Honor, I believe that there is a—a new policy that came out in 2020, that I would request to be—to supplement the record with.
>
> [Court]:  The—I would—I would request that that be provided to the Court—
>
> [Amoroso's counsel]:  Yes, Your Honor.
>
> [Court]:  — at least for my review.
>
> [Amoroso's counsel]:  Yes, Your Honor.
>
> [Court]:  All right.  All right.  Anything further, [Amoroso's counsel]?
>
> [Amoroso's counsel]:  No, Your Honor.

Rule 74.05(c)(5) allows a party to file a motion seeking leave of court to supplement the summary judgment record after the step-by-step back-and-forth of the

---

[8] It seems obvious that Amoroso modified his argument to rely on the 2020 version of the University's Code of Policies because it provides greater procedural protections to faculty members who are subject to an employment action than the 2014 version of the Code.

summary judgment process has been completed.[9]  However, the summary judgment record cannot be supplemented unless the court grants leave.  Here, even if we were to treat the colloquy set out above as an oral motion by Amoroso's counsel to supplement the summary judgment record—a conclusion we do not reach—the court did not grant leave under Rule 74.05(c)(5) to amend the summary judgment record by adding the 2020 Code of Policies.

When reviewing the grant of summary judgment, "[w]e look exclusively to the step-by-step procedure mandated by Rule 74.04 to determine whether there is a genuine issue of material fact."  *Bracely-Mosley*, 662 S.W.3d at 810.  Here, in the step-by-step procedure mandated by Rule 74.04, there is no mention of the 2020 Code of Policies upon which Amoroso's claim for ongoing pay rests.  Thus, there is no genuine issue of material fact as to Amoroso's claims for actual damages.[10]

Points I and III are denied.

## II. The motion court did not err in granting summary judgment in the University's favor on the issue of consequential damages (Points II and IV).

For his second point, Amoroso argues the motion court erred in granting summary judgment to the University on his breach of contract claim because Missouri law allows

---

[9] Rule 74.05(c)(5) states, "No other papers with respect to the motion for summary judgment shall be filed without leave of court."

[10] Even if Amoroso's argument on appeal were broad enough to include the argument that the motion court erred in granting summary judgment because he had a right to ongoing pay under the terms of the University's 2014 Code of Policies, his claim would fail because the University's decision to suspend him and not to renew his contract did not constitute a dismissal for cause prior to the expiration of a term of employment.

recovery of consequential damages that result from the University's breach of his employment contract. For his fourth point, Amoroso alleges the same error as to his claim for breach of the covenant of good faith and fair dealing.

"Consequential damages are those damages naturally and proximately caused by the commission of the breach and those damages that reasonably could have been contemplated by the defendant at the time of the parties' agreement." *Cason v. King*, 327 S.W.3d 543, 553 (Mo. App. S.D. 2010) (quoting *Catroppa v. Metal Bldg. Supply, Inc.*, 267 S.W.3d 812, 818 (Mo. App. S.D. 2008)).

The University argues that Missouri case law does not permit recovery of consequential damages for breach of an employment contract because the appropriate measure of damages for the breach of an employment contract is the contract price minus any income the employee earned. *See Keveney*, 304 S.W.3d at 102-03; *Hendler*, 838 S.W.2d at 488; *Phipps*, 645 S.W.2d at 105. And it is undisputed that Amoroso remained employed by the University for the full term of his contract and received the full contract price.

Amoroso counters that Missouri law does allow recovery of consequential damages for breach of an employment contract, but none of the cases he cites in support actually involved termination of an employment contract. *Ullrich v. CADCO, Inc.* involved breach of a sales contract for a modular home. 244 S.W.3d 772, 774 (Mo. App. E.D. 2008). *Catroppa* involved a contract for construction of a concert venue. 267 S.W.3d at 815. And both *Ullrich* and *Catroppa* were decided before the Supreme Court's 2010 decision in *Keveney*. Amoroso also cites *Curators of Univ. of Mo. v.*

*Suppes* but that case involved claims that a former faculty member breached duties associated with intellectual property rights. 583 S.W.3d 49, 54 (Mo. App. W.D. 2019). The consequential damages sought in *Suppes* arose from the misappropriation of patents, not from employment termination.[11] *Id.* at 60-61. Thus, none of the cases cited by Amoroso supports his contention that consequential damages are available for breach of an employment contract.

We need not resolve whether consequential damages are an available remedy for an alleged breach of an employment contract because, even if Missouri law allowed a claim for consequential damages based on the alleged failure by the University to provide due process required by its policies, that claim would fail for the same reasons we set out in addressing Points I and III. Amoroso argued that the Appointment at issue incorporated by reference the University's Code of Policies as amended in 2020. But during the Rule 74.04 summary judgment process, Amoroso relied upon only the 2014

---

[11] Amoroso also cites *Bamber v. Prime Healthcare Kansas City-Physician's Services, LLC*, No. 17-CV-00229-W-HFS, 2017 WL 11690058 (W.D. Mo. June 12, 2017). While the plaintiff in *Bamber* did seek "special damages" relating to costs associated with establishing a new medical practice following the alleged breach of his employment contract, the issue before the court was a Rule 12(b)(6) motion to dismiss. *Id.* at *1. In denying the motion, the court stated,

> This is not to say that Bamber is entitled to special damages, only that this question can be decided on a motion for summary judgment after the parties complete discovery. It is too early to conclusively determine that Bamber's damages are limited to his unpaid salary differential as a matter of Missouri law.

*Id.* at *2. The *Bamber* court did not mention or attempt to distinguish *Keveney*, *Hendler,* or similar cases.

version of the Code. The 2014 Code of Policies provided limited due process rights to members of the University's academic staff, but only if dismissed for cause before the expiration of a term appointment. Thus, even if the 2014 Code of Policies guaranteed the due process protections Amoroso claims, a finding we do not make, those protections are designed only to ensure that a faculty member's term of employment is not cut short or his salary reduced. Amoroso does not argue that he was dismissed before the expiration of the Appointment, and he concedes that he was paid his full salary. Thus, there were no uncontroverted facts in the summary judgment record that support his claim for consequential damages. *Vescovo*, 628 S.W.3d at 653 (once the movant makes a prima facie showing, the non-movant must demonstrate a genuine dispute as to at least one material fact on which the movant relies).

Points II and IV are denied.

### III. The motion court did not err in ruling on the University's summary judgment motion when it did (Point V).

For this final point, Amoroso contends the motion court erred in granting summary judgment before there was an opportunity for meaningful discovery, thereby unreasonably limiting him to one deposition on narrow topics.

The parties disagree about the applicable standard of review for Point V. Amoroso argues that we should review this claim of error under the *de novo* standard of review applicable to awards of summary judgment. The University asserts that we should review the motion court's decisions regarding the timing and manner of discovery under the more deferential abuse of discretion standard. We need not resolve this

17

dispute, however, because, even under the more stringent *de novo* standard, the motion court did not err.

Amoroso filed his petition on June 10, 2021.  He did not seek any discovery until January 25, 2022, when he filed two notices of deposition.  The University moved for summary judgment the next day and, shortly thereafter, moved for a protective order to stay discovery pending resolution of its summary judgment motion and to quash the deposition notices.  Amoroso then moved to extend the deadline for responding to the University's summary judgment motion and to conduct "some limited discovery" before filing his response.  Before the court ruled on the competing discovery motion, Amoroso responded to the University's motion for summary judgment, and the University replied.

The court then granted Amoroso an opportunity to conduct discovery on the issues raised in the University's summary judgment motion, and Amoroso deposed the Provost. Thereafter, Amoroso filed another unopposed motion for a brief extension, which was granted, but he did not seek to depose any other witnesses, nor did he file any written discovery requests.[12]  Instead, roughly six weeks after the Provost's deposition, Amoroso filed a supplemental response and additional statement of uncontroverted material facts, signaling that he had completed the discovery he felt necessary to respond to the University's motion.

Nearly two years passed from the filing of Amoroso's petition to the disposition of the University's summary judgment motion.  During that time, Amoroso twice sought,

---

[12] In fact, during the nearly two years that this case was pending before the circuit court, Amoroso never filed any requests for written discovery.

and was twice granted, additional time to respond to the University's motion; the University did not oppose either request. And the motion court gave Amoroso additional time when it granted his motion for limited discovery. At each turn, the motion court gave Amoroso the additional time he requested, and he was allowed to conduct some discovery. We will not find error where the motion court gave the complaining party the relief he requested. *State v. Hightower*, 511 S.W.3d 454, 462 (Mo. App. E.D. 2017) ("A trial court does not commit error when it grants all the relief requested."). Thus, the motion court did not err by ruling on the University's summary judgment motion when it did. Point V is denied.

## Conclusion

Because the summary judgment record here demonstrates that there is no genuine issue of material fact and the University is otherwise entitled to judgment as a matter of law, we affirm the motion court's award of summary judgment to the University.

_____
Karen King Mitchell, Judge

Lisa White Hardwick, Presiding Judge, and Cynthia L. Martin, Judge, concur.